# CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

### JOHN DEERE PLOW CO. v. MOWRY.

(Circuit Court of Appeals, Sixth Circuit. May 4, 1915.)

No. 2579.

1. CHATTEL MORTGAGES ⬤⇒82—RECORDING—NECESSITY—LAW GOVERNING.

If a contract between a manufacturer of farm implements and a retail dealer in Michigan, approved by the manufacturer in Indiana, amounted to an absolute sale whereby the title passed, accompanied by a pledge or lien in the nature of a chattel mortgage given the manufacturer to secure the purchase price, the necessity for recording the contract and the effect upon creditors of a failure to record were to be determined by the law of Michigan.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 151; Dec. Dig. ⬤⇒82.]

2. CHATTEL MORTGAGES ⬤⇒2—SALE OR MORTGAGE—RECORDING—NECESSITY—LAW GOVERNING.

Where a controversy as to whether a contract between an Indiana manufacturer and a Michigan retail dealer was one of conditional sale, not required or permitted by the state law to be recorded, or one of absolute sale accompanied by a pledge or lien in the nature of a chattel mortgage, required to be recorded, arose in Michigan, there was no statute in Indiana purporting to declare the character of such a contract, and the decisions of the two courts were to the same effect, except that the Michigan cases went further in attempting to differentiate between the two classes of contracts, the nature of the contract would be determined as if the contract had been made in Michigan, though the contract provided that it should be construed under the law of Indiana.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 2; Dec. Dig. ⬤⇒2.]

3. SALES ⬤⇒454—CONDITIONAL SALES—CONSTRUCTION OF CONTRACTS.

Where a contract of sale contains inconsistent provisions, some of which indicate that the title is reserved by the seller and some that the title passes, the dominant thought must be ascertained and given effect, regardless of any contrary statement.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1324, 1325, 1333, 1334; Dec. Dig. ⬤⇒454.

What constitutes a contract of conditional sale, see note to Dunlop v. Mercer, 86 C. C. A. 448.]

---

**4. SALES ☞464—CONDITIONAL SALES—VALIDITY OF RESERVATION OF TITLE.**

In Michigan a reservation of title in a contract for the sale of goods by a manufacturer to a retail dealer, which authorizes a resale by the dealer, can be sustained as a conditional sale only on the theory that the resale is made by the dealer as the agent or consignee of the manufacturer by an agency or consignment which underlies the executory sale, and which is a continuing one until it is terminated either by the resale or by the dealer's personal performance of the conditions, which then for the first time vest title in him.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1352; Dec. Dig. ☞464.]

**5. COURTS ☞368—UNITED STATES COURTS—STATE LAWS AS RULES OF DECISION.**

It is only to a settled rule of a state court applicable to the precise facts disclosed by the record that a federal court should yield its own judgment.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 951; Dec. Dig. ☞368.

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

**6. CHATTEL MORTGAGES ☞6—RECORDING—NATURE OF INSTRUMENT.**

A contract between a manufacturer of farm implements and retail dealers provided that all implements ordered thereunder were bought subject to the usual manufacturer's warranty to do good work when properly operated; that under no circumstances would goods be returned without direction from the manufacturer; that no countermand of the order should be made, except on payment of a specified part of the purchase price; that in the event of death, failure, insolvency, loss by fire, or if the dealer should sell, dispose of, or discontinue its business, all obligations thereunder were to become due and payable at once; that notes for the purchase price of goods were to be given on receipt of the invoice or upon monthly balances at the manufacturer's option; that in consideration of $1 it was thereby agreed that the title to and ownership of all goods ordered thereunder should remain in, and their proceeds in case of sale should be the property of, the manufacturer, subject at all times to their order until full payment in cash for the goods. *Held* that, in the absence of a controlling decision by the state courts, the contract could not be upheld as one of conditional sale, under which title did not pass, and which by the state law was not required to be recorded, but that *the provisions regarding title amounted to a chattel mortgage, which* under the laws of the state should have been recorded.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 23–41; Dec. Dig. ☞6.]

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Proceeding by the John Deere Plow Company to reclaim from Leon D. Mowry, trustee in bankruptcy of Miller Bros., certain property. From a judgment dismissing the intervening petition of the Plow Company, it appeals. Affirmed.

W. N. Choate and Harvey D. Scott, both of Detroit, Mich., for appellant.

C. L. Robertson, of Adrian, Mich., for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. The District Court dismissed the intervening petition by which the John Deere Plow Company sought to reclaim from the bankruptcy trustee of Miller Bros. a spreader, a sulky, a silo filler, a hay loader, a side delivery rake, and about 50 plow points and shares. The whole controversy turns upon whether the contract between the Deere Company, manufacturer, and Miller Bros., retail dealers, was one of conditional sale, so that the title did not pass out of the manufacturer so long as the goods remained unsold by Miller Bros., or was one of absolute sale, whereby the title did pass, accompanied by a pledge or lien given back to the seller to secure the purchase price. If the former, the contract was not, by any applicable statute, required or permitted to be recorded, and the reservation of title is good as against the trustee; if the latter, the contract amounts to a chattel mortgage, and, under the June, 1910, amendment of section 47a of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 557, as amended Act June 25, 1910, c. 412, § 8, 36 Stat. 840 [Comp. St. 1913, § 9631]), it is invalid against the trustee, because not filed. The solution of the question depends so far upon the exact terms of the contract that all material parts are reproduced in the margin.[1]

[1] Morenci, Mich., October 14, 1912.
John Deere Plow Company of Indianapolis, Indianapolis, Indiana:
Please enter my order for goods specified in the following list at the following prices and terms, and ship (see page 3) on or about 1/14 * * * for which we agree to pay according to prices and terms as stated in the list hereto attached.

The prices named herein apply to this order only, and are subject to change without notice.

I expressly agree to give notes on receipt of invoice, or upon monthly balances, at your option, drawn with exchange on Chicago or New York, and with interest at the highest permissible rate after maturity, and all goods ordered hereafter for this season's trade shall be subject to the same conditions as to time and manner of payment as indicated herein.

The notices and conditions of sale on pages 2, 3, 4, 5 and 6, are made a part of this contract, the same as if set out herein in full, and this order is given subject to the conditions mentioned therein, and "the undersigned" referred to on said pages means the purchaser.

Territory, Morenci and vicinity * * * on the classes of goods herein ordered. The law of the state of Indiana to govern the provisions of this contract. G. H. Miller.

Accepted subject to approval of John Deere Plow Company of Indianapolis. Howard Seely.

Approved by John Deere Plow Company, at Indianapolis, Ind., February 6, 1912.

### Conditions of Sale.

It is understood and agreed between the parties hereto:

First. That no claim shall be made or allowed for breakage of hardened molds, shares, shovels or landsides.

Second. That no claim shall be made or allowed for alleged defective material or workmanship, unless the article is produced and the defect is plainly apparent.

Third. The John Deere Plow Company of Indianapolis shall not be held responsible for the performance of a plow after it has been heated or radically changed by any one away from the factory.

Fourth. If, in case of fire, labor troubles, strikes, inability to obtain cars, inability to secure sufficient amount of goods to fill all orders taken, John Deere Plow Company of Indianapolis are delayed in filling this order, or for

[1, 2] When once it·is determined whether the contract in question evidences· a conditional ·sale or a chattel mortgage, the necessity for ·recording and the effect upon· creditors of a failure to record are to be determined by Michigan law. Potter Co. v. Arthur (C. C. A. 6) 220 Fed. 843, 136 C. C. A. 589, opinion filed March 2, 1915. In view of the express contract provision that it should be construed and interpreted under the laws of Indiana, defendants claim that the under-

any of said causes, or if from any unavoidable cause said John Deere Plow Company of Indianapolis are unable to entirely comply with this order and ship all the goods, then and in either of such events said John Deere Plow Company of Indianapolis shall not be held liable or accountable for damage or loss for failure to fully supply the goods ordered, and all claims on account thereof are herein and hereby released and waived.

Fifth. That all implements hereby ordered are bought subject to the usual manufacturer's warranty—"to do good work when properly operated"—and ·failing to do this after the undersigned has used his best efforts, he will give ·immediate notice to John Deere Plow Company of Indianapolis, and allow time ·for instructions to be given, or, if necessary, the sending of a person to put it in order; failing then to make the implement work, it may be held subject to the order of John Deere Plow Company of Indianapolis; but under no circumstances will the undersigned return goods without direction from John Deere ·Plow Company of Indianapolis. In case the fault is with the purchaser, through his neglect to follow directions, or carelessness in using, the undersigned agrees to pay for the time and expenses of the person sent to put it in order.

Sixth. That no countermand of this order shall be made except on payment of twenty per cent. of the net amount of the goods purchased of John Deere Plow Company of Indianapolis as liquidated damages.

Seventh. It is further agreed that in the event of death, failure, insolvency, loss· by fire, or should the second party sell, dispose of or discontinue its business, then all obligations arising under this contract are to become due and payable at once in cash.

Eighth. In consideration of one dollar in hand paid the undersigned by John Deere Plow Company of Indianapolis, the receipt whereof is hereby acknowledged, it is hereby further agreed that the title to and ownership of all the goods which may be shipped as herein provided or upon the terms, and during the life of this contract, and which shall embrace and include any and all goods that may hereafter be ordered shipped, shall remain in, and their proceeds, in case of sale, shall be in law and in equity the property and ·moneys of said John Deere Plow Company of Indianapolis, and subject at all times to. their order until full payment in cash shall have been made to and ·accepted by said John ·Deere Plow. Company of Indianapolis for said goods. It is further stipulated and agreed that the taking of a note or notes of the undersigned or the taking of sale notes in settlement and the rendition of a judgment on such note 'or notes in favor of John Deere Plow Company of Indianapolis, shall in nowise be deemed or construed a waiver of title to the property. Nothing in this clause, however, is to release the undersigned from making payment as provided for in this contract, and this contract shall be construed as having been entered into in the state of Indiana, and construed and interpreted under the laws of said state, said state being the place of acceptance.

Ninth. That party of the first part reserves to itself the right to revoke this contract, and all orders under same, at any time it may see fit, without any liabilities for loss or· damages.

Tenth. That all notes of the undersigned are to be secured by farmers' notes, proceeds of sale, of an equal amount and * * * per cent. in addition, as collateral security to his or their notes whenever so requested by John Deere Plow Company of Indianapolis. * * * No cash discounts allowed after dates named in contract.

lying question as to the character of the contract is a matter of Indiana law. We do not find it necessary to pass upon this question. So far as has been pointed out, or so far as we find, there is no statute in Indiana purporting to declare the character of such a contract; and the decisions of the Indiana courts have gone no further than to hold that the existence in the vendee of the right to sell and give good title is not inconsistent with a reservation of title in the vendor, good and valid as against the vendee's creditors, so long as the property remains in the vendee's hands unsold. The Michigan rule is to the same effect, but the Michigan cases have gone much further in attempting to differentiate between the two classes of contracts. The Indiana courts not having passed on these nicer distinctions, and the controversy having arisen in Michigan, it is at least to be presumed that the Indiana law is the same as that of Michigan; accordingly (for this reason, if not also for the reason that the Michigan recording law is being applied), we must consider the question just as if the contract had been made in Michigan.

[3, 4] This court had occasion, in Mishawaka Co. v. Westveer, 191 Fed. 465, 112 C. C. A. 109, to consider a closely analogous question and to review some of the Michigan decisions. Others, not mentioned in that review, are now brought to our attention. It seems natural to divide into two classes the cases which have been decided in Michigan upon this general subject. In one class may be put articles like machinery, somewhat permanently installed, intended for use by the vendee, and not intended for resale by him. These cases present no inherent difficulty in sustaining the vendor's reserved title as fully as the seemingly very liberal policy of the state in this respect may justify. There is usually nothing in the contract or in the surrounding conditions inconsistent with the expressed reservation of title, and so nothing to interfere with its natural full effect. In the other class are the cases where it is clear, either by express words or by necessary implication, that both parties intended the vendee should resell the property to others, and should give to such second purchaser a perfect title. Here, at once, we have an inconsistency. How can the vendee sell that which he does not own? It goes without saying that if there are, in the contract, inconsistent provisions, some of which indicate that the title was reserved, and some that the title passes, the dominant thought must be ascertained and given effect, regardless of any formal contrary statement. By a review of the Michigan cases and the principles which must control, we are led to the conclusion that a reservation of title can be sustained (as a conditional sale) as against a declared right of resale only on the theory that the resale is made by the vendee as the agent or consignee of the vendor, by an agency or consignment which underlies the executory sale and which is a continuing one until it is terminated either by the resale or the vendee's personal performance of the conditions, which then, for the first time, vest title in him. We do not find that the respective force of these superficially conflicting features of the contract, or the reasons which induce the conclusion that one or the other is dominant, have ever been stated or discussed by the Michigan Supreme Court. The decisions content themselves with stating one or the other conclusion. It is not easy to reconcile all the cases

by our suggested test as to whether the theory of pro tem. agency or consignment will fit the facts. Perhaps some of them cannot be reconciled; but we see no other means of extracting a principle of decision.

In Brewery Co. v. Merritt, 82 Mich. 198, 46 N. W. 379, 9 L. R. A. 270, and Pratt v. Burhans, 84 Mich. 487, 47 N. W. 1064, 22 Am. St. Rep. 703, stocks of goods had been placed by manufacturers with retail dealers for the purpose of retail sale, but a reservation of title had been declared. In both cases, the reservation was sustained. In neither case do the facts stated disclose anything inconsistent with what would be, in substantial effect, a consignment or an agency to resell—up to the time when the vendee became obliged to pay the price and take the title. In the Mishawaka Case, we gave this interpretation to these two cases.

Then came Choate v. Stevens, 116 Mich. 28, 74 N. W. 289, 43 L. R. A. 277, and Van Den Bosch v. Bouwman, 138 Mich. 624, 101 N. W. 832, 110 Am. St. Rep. 336. Each of these cases belonged in the class of articles not intended for resale; but in each an intent to pass title to the vendee was found with sufficient certainty to overcome the expressed declaration that title should not pass; and, of course, such cases become all the stronger against the passing of title when applied to instances of the other class, where the existing right of resale must be given due effect.

[5] It is to be noted, however, that these two cases were not, by the Michigan Supreme Court, given any broad effect, but were distinguished, on perhaps rather narrow grounds, in Bunday v. Columbus Co., 143 Mich. 10, 106 N. W. 397, 5 L. R. A. (N. S.) 475; and that Choate v. Stevens was again distinguished, and was not followed, in Worden v. Blanding, 161 Mich. 254, 126 N. W. 212, 20 Ann. Cas. 1332. The latter case involved a stock of groceries sold to a retailer, and, obviously, the right of resale was contemplated; nevertheless the sale was held a conditional one. Here, too, we see no more difficulty in finding the idea of what was (temporarily and pending the maturing of the sale) a mere consignment or agency than in Brewery Co. v. Merritt and Pratt v. Burhans. In American Harrow Co. v. Deyo, 134 Mich. 639, 96 N. W. 1055, we have a case not easily distinguishable from the one at bar; and reclamation was approved. The contract is given in full in 134 Mich. on pages 640, 641, and in 96 N. W. on pages 1055, 1056. In most respects, it is as favorable to the absolute sale theory as is the Deere contract; but it requires the proceeds of sale to be remitted at once to the vendor, while the Deere contract is at least consistent with the vendee's right to retain the proceeds until the vendee's purchase price obligation matured. There are other distinctions which, while singly not impressive, have some force in the aggregate. There is considerable discussion in Wasey v. Whitcomb, 167 Mich. 58, 132 N. W. 572; but the contract is clearly classified as one of consignment. Upon the whole, we are not satisfied that this Deyo Case, or the others named, have the effect of overruling Choate v. Stevens and Van Den Bosch v. Bouwman. This comes to saying, when taken in connection with the other cases cited, that we think there is no settled rule in Michigan applicable to the precise facts disclosed by this record; and it

is only to such settled rule that we should yield our own judgment. Burgess v. Seligman, 107 U. S. 20, 33, 2 Sup. Ct. 10, 27 L. Ed. 359.

[6] Our general view of such a situation was disclosed and sufficiently discussed in Mishawaka Co. v. Westveer, and it is to the effect that, where goods are intended for resale, the reservation of title cannot stand (as a conditional sale), unless, taking the entire contract and circumstances together, it is clearly dominant over the right of resale and the other inconsistent features of the contract; in other words, the facts as a whole must be consistent with the theory that the resale is to be made by the vendee as agent or consignee, and not as owner. It is true that, in the Mishawaka Case, there was special reliance on the fact that the contract did not attempt to preserve to the vendor a substituted title to the proceeds when the goods were sold, and that, in the present case, this reservation is, in terms, made; but we are not satisfied, taking all the conditions together, to treat this as a controlling distinction. To observe where the loss would have been if the goods had been destroyed in transit before reaching Miller Bros., or if they had been destroyed by fire while in Miller Bros.' possession, will furnish useful tests. It is quite clear that in either of these contingencies Miller Bros. would have been obliged to pay the full purchase price just the same. It is true, also, as to each one of the conditions which seems to indicate that the contract was intended to pass title, that a Michigan decision is to be had showing that this condition or an equivalent one does not neutralize the express reservation of title; but the real intent of the parties is to be drawn from the full contract and from the joint effect of all the conditions. The provisions as to the manufacturer's warranty; that no goods can be returned to the vendors; that no countermand of the order can be made; that the full purchase price matures at once in case of death, insolvency, fire loss or selling out the business; that the vendee gives at once purchase-price notes which must be secured; and that the reservation of title is in form based upon a separate consideration—all these conditions tend to support the conclusion that the contract is really one of sale, that the provisions regarding title amount to a chattel mortgage, and that the instrument should have been recorded. While we regret that it is not entirely clear what disposition of the present case is required by the Michigan rule, yet, in the absence of a clearly controlling decision by that court, we are better satisfied to adopt the analogy of this case to Mishawaka Co. v. Westveer than its analogy to American Harrow Co. v. Deyo; and accordingly the judgment below is affirmed.

See, also, Coweta Co. v. Brown (C. C. A. 6) 163 Fed. 162, 165, 89 C. C. A. 612; Flanders v. Reed (C. C. A. 1) 220 Fed. 642, 136 C. C. A. 250.

NOTE.—The opinion of the Circuit Court of Appeals for the Eighth Circuit in John Deere Plow Co. v. McDavid, 137 Fed. 802, 70 C. C. A. 422, seems to depend upon the agency or consignment contract involved, rather than upon the order for the goods; and this contract is so essentially different from the Miller Bros. contract that there is no inconsistency between that opinion and the result in the present case."