Argued January 23, modified February 6, 1917.

# INTERNATIONAL HARVESTER CO. *v.* BAUER.[*]

(162 Pac. 856.)

**Sales—Conditional Sales—Retaking of Property.**

1. Where a conditional sales contract is in the form of a lease with a specified rental and a provision, in event of default in payment, that vendor may resume possession of the chattel and hold the sums already paid as earned rentals, the retaking of the property is a rescission of the contract, relieving the vendee from further obligation.

**Sales—Conditional Sales—Retaking of Property.**

2. Where a conditional sales contract reserves title in the vendor with a right in case of default to retake the chattel, sell it at public or private sale, and apply the proceeds in payment of the debt, with an express agreement by the vendee to pay the balance of the purchase price then remaining, retaking the property by the vendor does not relieve the vendee from further obligation.

[As to when a person holding property under a conditional sale may transfer a perfect title, see note in 134 Am. St. Rep. 277.]

**Chattel Mortgages—Conditional Sales—Costs on Foreclosure.**

3. Where vendee in conditional sales contract gave a real estate mortgage as additional security, the vendor was not allowed attor-

---

[*]On effect of the retaking of property by seller on the rights and remedies of the parties to a contract of conditional sale, see notes in 32 L. R. A. 455; L. R. A. 1916A, 915.    REPORTER.

ney's fee on foreclosure of chattel mortgage evidencing vendor's lien, in addition to attorney's fee for foreclosure of real estate mortgage; both foreclosures being for the enforcement of the same obligation.

From Yamhill: Harry H. Belt, Judge.

Department 1.    Statement by Mr. Justice Benson.

This is an action by the International Harvester Company of America, a corporation, against Jean Bauer, Jacob A. Large and Hattie M. Large, his wife, and L. M. Scroggin. The facts are as follows:

On August 5, 1914, the defendant Jean Bauer purchased from the plaintiff corporation a threshing-machine and engine, giving in payment therefor three promissory notes, one being for $200, and the other two for $350 each, the notes all being in the same form and containing the following paragraphs:

"This note is given for one gasoline engine, and one thresher, with bagger and stacker. I agree that the title thereto, and to all repairs and extra parts furnished, shall remain in said company, its successors and assigns, until this and all other notes given for the purchase price shall have been paid in money. If I fail to pay this note when due, or if said property is misused or seized for my debts, the holder of this note may seize and sell the same at public or private sale, with or without notice, pay all expenses thereby incurred, and apply the net proceeds upon this note and other notes given for the purchase price thereof, whether due or not due, and retain all payments before made as rent for the use of said property. I expressly agree to pay any balance on this note remaining unpaid after such property is sold, or if the same be burned or otherwise damaged or destroyed after its delivery to me. The indorsers, sureties, and guarantors severally waive presentment for payment, protest, notice of nonpayment, and diligence."

At the same time the defendant executed a chattel mortgage upon the same property, containing a cove-

nant of ownership, to secure the payment of notes, and contemporaneously therewith he executed a mortgage upon 60 acres of land in Yamhill County as additional security for the payment thereof. These notes matured on the first days of November, 1914, 1915, 1916, respectively. On April 20, 1915, no payment having been made upon the note which matured on November 1, 1914, plaintiff through its attorneys directed the sheriff of Yamhill County to seize the personal property described in the chattel mortgage and to sell the same in accordance with the terms thereof, which was done, and thereafter the sheriff filed his return, from which it appears that he posted notices of such sale in three public places in Yamhill County and published such notices for more than ten days prior to said sale in the "Willamina Times" and the "Sheridan Sun," and on Monday, the third day of May, 1915, sold the property at public auction to the highest and best bidder for cash; that the price received therefor was $200; that the expenses, costs and sheriff's commission amounted to $16.70; that $100 was paid as attorney's fees in connection with said sale; and that there was a credit made upon the notes of $84.30. On April 20, 1915, the plaintiff began this suit to foreclose the mortgage upon the real estate.

The second amended complaint upon which the case was tried recites the facts as herein stated, and prays for a decree in accordance therewith. To this complaint the defendant answered, taking issue, so far as the matter is of interest upon this appeal, upon the question as to whether or not the sale was an absolute one or conditional. A trial being had, there was a judgment and decree for plaintiff for the full sum of $900, with interest, $100 as reasonable attorney fees,

and for costs and disbursements, from which judgment and decree defendant appeals.   MODIFIED.

For appellants there was a brief over the names of *Mr. W. O. Sims* and *Mr. Joseph Mannix,* with an oral argument by *Mr. Sims.*

For respondent there was a brief over the names of *Messrs. Holmes & Pearce* and *Mr. E. S. Snelling,* with an oral argument by *Mr. Frank Holmes.*

MR. JUSTICE BENSON delivered the opinion of the court.

There is no substantial conflict in the evidence. On August 5, 1914, the notes, chattel mortgage and real estate mortgage were executed. The first note was due November 1, 1914, and no part thereof was paid. On April 20, 1915, the defendant still being in default, plaintiff directed the sheriff to seize the personal property and sell it in accordance with the terms of the chattel mortgage, and at the same time began this suit to collect the purchase price and to foreclose the real estate mortgage.

Defendant urges with much force the contention that the contract as set out in the promissory notes and the chattel mortgage constitutes but one agreement which is purely a conditional sale; that the seizure by the sheriff was nothing more than a retaking of the machinery under the vendor's reservation of title, and that such action is in effect a rescission of the contract which leaves the real estate mortgage without consideration. It seems perfectly clear to the writer that the facts disclose a clear and unequivocal election upon the part of plaintiff to treat the transaction as a completed, absolute sale, and to proceed

82 Or.—44

to the collection of the purchase price, as he has an undoubted right to do: *Herring-Marvin Co.* v. *Smith,* 43 Or. 321 (72 Pac. 704, 73 Pac. 340); *McDaniel* v. *Chiaramonte,* 61 Or. 403, 408 (122 Pac. 33). If we concede for the purposes of this discussion that the seizure of the machinery under the terms of the chattel mortgage is equivalent to taking possession under the terms of the notes, defendant's deductions therefrom do not necessarily follow.

1. There is considerable variety in the form and character of conditional sales contracts. In some instances the agreement is in the form of a lease with a specified rental and a provision, in the event of a default in payment, that the vendor may resume possession of the chattel and hold the sums already paid as earned rentals. The courts have properly held in such instances that the retaking of the property is a rescission of the contract, operating to relieve the vendee from any further obligation. The following cases are illustrations of this species of agreement: *Manson* v. *Dayton,* 153 Fed. 258 (82 C. C. A. 588); *Parke & L. Co.* v. *White River Lumber Co.,* 101 Cal. 37 (35 Pac. 442).

There is another group wherein the vendor reserves title within himself, with an express power to retake the chattel upon default and sell it, applying the proceeds of such sale upon the purchase price, but without any stipulation for a continuing liability upon the part of the vendee. As to the effect of this class of contracts the authorities are in conflict. In Kansas and Michigan the courts have held that the vendor is entitled to take and sell the chattel, apply the proceeds of such sale to the purchase price, and then proceed by action to enforce the collection of the unpaid balance thereof: *Christie* v. *Scott,* 77 Kan. 257 (94 Pac.

214) ; *Van Den Bosch* v. *Bouwman,* 138 Mich. 624 (101 N. W. 832, 110 Am. St. Rep. 336). The Supreme Court of Minnesota, however, has held that in such cases the vendor cannot recover the remainder of the purchase price, basing its conclusion upon the theory that the promise of payment and the implied obligation to transfer the title are mutual, and as each is the sole consideration for the other, and both are to be performed at the same time, they are concurrent conditions of the same agreement in the nature of mutual conditions precedent, so that inability or refusal to perform one would excuse the performance as to the other: *Third Nat. Bank* v. *Armstrong,* 25 Minn. 530; *Minneapolis Harvester Works* v. *Hally,* 27 Minn. 495 (8 N. W. 597).

2. We then have the type of contract of which the one under present consideration is a striking example. There is a reservation of title in the vendor, the right in a case of default to retake the chattel, sell it at public or private sale, and apply the proceeds in payment of the debt, and an express agreement upon the part of the vendee to pay the balance of the purchase price. Minnesota and Arkansas have held that a sale of the chattel in such cases and applying the proceeds to the purchase price effect a cancellation of the remainder of the debt: *Keystone Mfg. Co.* v. *Cassellius,* 74 Minn. 115 (76 N. W. 1028); *Nashville Lumber Co.* v. *Robinson,* 91 Ark. 319 (121 S. W. 350). We think the great weight of authority and the better reasoning support the contrary doctrine that, if the vendee sees fit to enter into a contract of this sort, it is the duty of the courts, when called upon, to enforce it as it is written. The appellate courts of Canada have uniformly sustained this view: *Gaar-Scott Co.* v. *Mitchell,* 1 D. L. R. 283; *Abell Mfg. Co.* v. *McGuire,* 13 Manitoba L. Rep.

454; *Hopkins* v. *Danroth,* 1 Sask. L. R. 225; *Peebles* v. *Johnson,* 1 Sask. L. R. 523. In Oklahoma, New York and Texas the same view is adopted: *McCormick Harvesting Machine Co.* v. *Koch,* 8 Okl. 374 (58 Pac. 626); *Warner* v. *Zuechel,* 19 App. Div. 494 (46 N. Y. Supp. 569); *Ascue* v. *Aultman & Co.,* 2 Willson Civ. Cas. Ct. App. 444. As is very aptly said in *White* v. *Solomon,* 164 Mass. 516 (42 N. E. 104, 30 L. R. A. 537), cited by defendant:

"We are not to construe equities into the contract, but to carry it out as the parties were content to make it. If a man is willing to contract that he shall be liable for the whole value of a chattel before the title passes, there is nothing to prevent his doing so, and thereby binding himself to pay the whole sum."

However we may deplore the folly of the defendant in entering into such a contract or the unbounded avarice of a plaintiff who would enforce it to such an extent, we cannot see our way clear to relieve the defendant from the burden of his deliberately assumed obligation.

3. There are nevertheless some slight errors in the decree of the lower court which must be corrected. The plaintiff cannot have two attorney fees allowed for the enforcement of the same obligation, and since the court has properly allowed an attorney fee of $100 for prosecuting this suit, the $100 which were withheld upon the sale under the chattel mortgage should be credited upon the note, making a total credit of $184.30 thereon. With this and the further modification that neither party recover costs in the lower court, and that the defendant recover his costs in this court, the decree is affirmed.    Modified.

Mr. Chief Justice McBride, Mr. Justice Moore and Mr. Justice Burnett concur.