Argued October 9, reversed November 12, 1918.

## MILES *v.* SABIN.

(175 Pac. 863.)

**Sales—Conditional Sales—Validity.**

, 1.  Conditional sales are valid and binding obligations.

**Sales—"Conditional Sales"—"Bailment."**

2.  The main distinction between a "bailment" and a "conditional sale" is that in a conditional sale there is a promise or agreement to pay, and in a bailment there is no such promise or agreement.

> [As to difference between sales and bailments, see note in 2 Am. St. Rep. 711.]

**Sales—Conditional Sale—Construction of Contract.**

3.  Contract between manufacturer and implement dealer, providing "that the terms and conditions of sale apply to all goods which may be ordered," that "nothing in this contract shall release the party from paying the agreed price," and that any notes held by manufacturer should continue to be valid obligations, but that manufacturer should have option to take possession of unsold goods at termination of contract, was a conditional sale contract, and not a contract making implement dealer bailee of manufacturer.

From Linn: GEORGE G. BINGHAM, Judge.

Department 2.

The defendant, John Deere Plow Company, hereinafter referred to as the Plow Company, is an Illinois corporation engaged in the manufacture and sale of farming machinery and duly licensed to transact business in the State of Oregon. The plaintiff is a merchant doing business at Brownsville in this state. On March 2, 1916, plaintiff and defendant entered into a written agreement, known as a general implement contract, under which the Plow Company promised to furnish goods, wares and merchandise to the plaintiff until November 1st of the same year, on the terms and conditions therein stated. The contract provides:

"First.—The terms and conditions of sale herein set forth apply to all goods ordered herein, and to all subsequent orders, whether given by mail, telephone, telegram, verbally or otherwise, during the life of this contract, which is to remain in force and effect until November 1, 1916, and shall apply to all orders given and accepted subsequent thereto, until the next annual general implement contract between the parties hereto is made, approved and in effect; it being understood, however, that subsequent orders accepted by the Plow Company shall be governed, as to prices, by the origin of shipment, as shown on the Plow Company's current price list. * *

"Fourth.—It is expressly agreed that the title to and ownership of all goods delivered to and held by the second party under this contract shall remain vested in the Plow Company, unless expressly surrendered by it in writing signed by an officer thereof, and said goods shall be held subject to its order until fully paid for in money. Sales at retail may be made by the second party before payment, but only in the regular course of business, and the second party has no authority to make sales in bulk. Nothing in this contract shall release the second party from paying the agreed price. Notes of the second party or his customers, taken by the Plow Company, are not accepted as payment. * *

"Sixth.—The second party agrees to give his notes, maturing as herein provided, for all goods shipped by the Plow Company, upon receipt of same or on any subsequent date, at the option of the Plow Company, and whenever requested by the Plow Company said second party shall deliver to the Plow Company proceeds of sales held by said second party as hereinbefore provided, amounting to twenty per cent (20%) in excess of the amount of notes given by the second party."

Among other things, the eighth clause provides that at the termination of the contract the Plow Company has the option to take possession of any unsold

goods, and credit the amount of the invoice price thereof upon any notes or accounts of the plaintiff, and that the plaintiff shall be liable to the Plow Company for any depreciation in the value of the goods, the amount of such depreciation to be determined by the Plow Company. "Any note or notes held by the Plow Company shall continue to be a valid obligation of the second party for the amount of such depreciation."

In the placing of an order for goods the plaintiff signed the following specially prepared written application:

"John Deere Plow Company of Portland, Oregon,
    "Portland, Oregon.

"Please ship goods specified in the within list, as per instructions and conditions contained herein, on or about —— AT ONCE ——, 191—, or as soon thereafter as possible, for which I agree to pay according to prices, terms and conditions stated herein, based on delivery f. o. b. Portland, except on such goods as are priced f. o. b. factories.

"It is understood that the prices named herein apply to this order only, and are subject to change without notice, and clerical errors in prices herein entered may be corrected by the Plow Company before approval.

"The Conditions of Agreement, Notices and Warranty as they appear on pages 3–4–5–6–7 hereof are made a part of this contract, and this order is given subject thereto.

'STRUBLE MILES.''

· Such an order was always subject to the approval of the Plow Company.

After the execution of such contract and pursuant to its terms, the plaintiff placed certain written orders with the Plow Company and on May 17, 1916, executed to it his certain promissory note for $249.95,

payable July 15, 1916, with interest at 8 per cent per annum from maturity, and a certain other promissory note for $90, payable August 15, 1916, with like interest, in each of which it was provided that in the event of suit or action he would pay reasonable attorneys' fees, the amount of the notes corresponding with the respective amounts of charges for merchandise which was shipped to the plaintiff pursuant to his written application. Thereafter, before July 31, 1916, the Plow Company under the terms and provisions of the contract furnished to the plaintiff merchandise to the amount of $73.91, for which the plaintiff did not execute his note.

The notes and account were assigned to the defendant Sabin for collection, and for failure to pay he commenced an action against the plaintiff here in the Circuit Court of Linn County, to recover the amount of the notes, attorneys' fees and the account. To defeat the action, the plaintiff filed his complaint in equity against the defendants, claiming in legal effect that he had never purchased any goods, wares or merchandise from the Plow Company, and that the facts made and constituted the plaintiff a bailee of the Plow Company for all of the goods which were shipped and delivered to him under the contract; that the notes were without consideration, and asking for a decree enjoining the prosecution of the action at law and for an accounting between himself and the defendants.

The defendants filed an answer in which they set forth and allege the terms of the written contract and the placing of the written orders, and claim that under the facts such transactions were conditional sales and that, the conditions having been waived, the plaintiff is now liable as a purchaser.

The only question to be determined on this appeal is the legal force and effect of the written instruments under consideration. The trial court found that under such instruments the plaintiff was the bailee of the Plow Company, enjoined the prosecution of the action at law and decreed that there should be an accounting between the plaintiff and the defendants. From this decree the defendants appeal.

REVERSED.

For respondent there was a brief submitted over the *Messrs. Cake & Cake* and *Messrs. Angell & Fisher,* with oral arguments by *Mr. William M. Cake* and *Mr. Homer D. Angell.*

For respondent there was brief submitted over the names of *Messrs. Weatherford & Weatherford* and *Mr. E. F. Bailey.* No appearance for respondent at the hearing.

JOHNS, J.—It is conceded that the Plow Company shipped merchandise to the plaintiff to the value of the notes and the open account; that the merchandise was ordered and received and the notes were executed by the plaintiff under the terms and provisions of the written contract. The purpose and intent of the contract on the part of the Plow Company is very apparent, and the plaintiff as one of its former salesmen was familiar with the terms and conditions of the agreement. The contract was intended to protect the Plow Company in dealing with its customers who were entitled to a limited credit only.

"It goes without saying that if there are in the contract inconsistent provisions, some of which indicate that the title was reserved and some that the title passes, the dominant thought must be ascertained and

given effect, regardless of any formal contrary statement": *John Deere Plow Company* v̇. *Mowry,* 222 Fed. 1–5 (137 C. C. A. 539, 543).

"Whether the transaction is a conditional sale depends not upon the name given it by the parties, or the form of the instrument evidencing it, but upon the ruling intention of the parties, gathered from all the language of the contract": *McDaniel* v. *Chiaramonte,* 61 Or. 403–407 (122 Pac. 33, 35).

The contract provides, "that the terms and conditions of sale apply to all goods which may be ordered"; that "nothing in this contract shall release the party from paying the agreed.price"; that the plaintiff agreed "to give his notes for all goods shipped by the Plow Company upon receipt of shipment"; and that any notes held by the Plow Company should continue to be valid obligations. The written order for the goods provides, "for which I agree to pay according to prices, terms and conditions" therein stated. All of this clearly implies that it was the purpose of the contract that the plaintiff should be and become liable as a purchaser; that the remaining provisions were designed for the protection of the Plow Company, and that for such purpose the title to the merchandise ordered and shipped should be and remain vested in the Plow Company until the purchase price was fully paid.

1, 2. While there is a sharp conflict in the authorities as to what is a bailment and what is a conditional sale, yet in this state conditional sales are held to be valid and binding obligations. This rule was first announced in the case of *Singer Mfg. Co.* v. *Graham et al.,* 8 Or. 17, 23 (34 Am. Rep. 572), and is followed and approved by *Landigan* v. *Mayer,* 32 Or. 245 (51 Pac. 649, 67 Am. St. Rep. 521) ; *Schneider* v. *Lee,* 33 Or. 578 (17 Pac. 269) ; *Herring-Marvin Co.* v. *Smith,* 43

Or. 315 (72 Pac. 704, 73 Pac. 340); *McDaniel* v. *Chiaramonte,* 61 Or. 403 (122 Pac. 33); *Thienes* v. *Francis,* 69 Or. 165 (138 Pac. 490); *Francis* v. *Bohart,* 76 Or. 1 (143 Pac. 920, 147 Pac. 755, L. R. A. 1916A, 922); and *International Harvester Co.* v. *Bauer,* 82 Or. 686 (162 Pac. 856). The main distinction between a bailment and a conditional sale is that in a conditional sale there is a promise or agreement to pay, and in a bailment there is no such promise or agreement.

"It is well settled that in a sale title passes to the buyer, while in an agency title remains in the principal although possession is transferred to the agent": 6 C. J. 1091, § 7.

"In general, provisions that the consignee shall on receipt of the goods, or at some time or times thereafter, pay for all goods received, whether sold or not, and that he may sell to whom he will, at what prices and on what terms he will, are characteristic of a contract of sale, whatever terms may be used in describing it. If it appears that possession of property has been transferred but that a naked title has been reserved merely to secure payment of the price, the contract is a sale, although in the agreement it may be called an agency": 6 C. J., § 1093, and authorities there cited.

The case of *Harkness* v. *Russell,* 118 U. S. 663 (30 L. Ed. 285, 7 Sup. Ct. Rep. 51) is well considered and the rule is there laid down that—

"in the absence of fraud an agreement for a conditional sale of personal property, accompanied by delivery, is good and valid as well against third persons as against parties to the transaction."

3. The question here presented is one between the parties to the contract. The plaintiff received the goods and admits the execution of the notes pursuant

to the terms of the contract, and we construe the contract to be a conditional sale: *McDaniel* v. *Chiaramonte*, 61 Or. 403 (122 Pac. 33); *International Harvester Co.* v. *Bauer*, 82 Or. 686 (162 Pac. 856); *John Deere Plow Co.* v. *Edgar Farmer Store Co.*, 154 Wis. 490 (143 N. W. 194); *Ludvigh* v. *American Woolen Co.* (D. C.), 176 Fed. 145; *Dunlop* v. *Mercer*, 156 Fed. 545 (86 C. C. A. 435); *William W. Bierce, Ltd., a Corp.*, v. *Hutchins*, 205 U. S. 340 (51 L. Ed. 828, 27 Sup. Ct. Rep. 524); *John Deere Plow Co.* v. *Mowry*, 222 Fed. 1 (137 C. C. A. 539). In the case of *Herring-Marvin Co.* v. *Smith*, 43 Or. 315, 331 (72 Pac. 704, 706), this court laid down the rule that:

"Where a party has agreed to purchase and pay for the property, and has or is entitled to possession until default, the seller may have choice of one of four distinct remedies, among which he may waive a return of the property, treat the contract as executed on his part, and recover from the buyer the agreed price."

This case was cited and approved in *McDaniel* v. *Chiaramonte*, 61 Or. 403 (122 Pac. 33).

We are of the opinion that the plaintiff is liable as a purchaser on the conditional contract of sale, and that there was a valid consideration for the promissory notes and the open account. The decree of the Circuit Court should be reversed and the cross-complaint dismissed. It is so ordered.          REVERSED.

MCBRIDE, C. J., and BEAN and OLSON, JJ., concur.