Argued at Pendleton May 3, reversed June 1, costs taxed June 22, 1926, rehearing denied.

## G. L. STANDRING v. WILLIAM GORDON ET AL.

(246 Pac. 361.)

Appeal and Error—Error in Ex Parte Order Appointing Plaintiff's Partner Receiver of Defendant Corporation and Injunction Order Without Bond Against Interference With His Management Held Immaterial on Appeal from Decree Foreclosing Defendant's Interests in Automobile and Stage Run Under Conditional Sale Contract.

1. *Ex parte* order appointing plaintiff's partner receiver of defendant corporation and injunction order without bond against interference by defendants with receiver's management of property *held* foreign to issues and error therein unnecessary to consider on appeal from decree foreclosing defendants' interests in, and ordering sale of, automobile bus and stage run sold to defendants under conditional contract.

Sales—Buyer in Possession of Automobile and Driving It in Transporting Passengers About 100,000 Miles for About One and One-half Years Held Precluded from Rescinding Contract for Fraud.

2. Buyer in possession of automobile bus for about one and one-half years, during which he drove it about 100,000 miles in transporting passengers, *held* precluded from rescinding contract for fraudulent representations inducing purchase.

Sales.

3. Buyer desiring to rescind contract for fraud should do so within reasonable time after discovering fraud.

Sales—Allegations of Complaint, in Suit to Foreclose Interests in Automobile and Stage Run, as to Sale of Latter, and Proof That It was Given Plaintiff as Security for Balance, Held Fatal Variance Precluding Consideration of Part of Contract as to Sale of Stage Run.

4. Allegations of complaint, in suit to foreclose defendants' interests in automobile bus and stage run, as to sale of latter to one defendant and proof that such defendant gave stage run to plaintiff as security for payment of balance, *held* fatal variance precluding consideration of part of contract as to sale of stage run.

Sales—Under Contract Authorizing Seller on Default in Payment to Terminate It, Retake Possession of Automobile and Retain Payments in Satisfaction of All Claims, Seller Obtaining Possession by Delivery or Levy in Foreclosure Proceedings was Entitled to No Further Relief.

5. Under conditional sales contract authorizing seller, on default in payment, to terminate it, retake possession of automobile sold and retain payments in full satisfaction of all claims, seller obtaining possession by delivery or levy in foreclosure proceedings was entitled to no further relief, as he could have obtained as much relief in action of replevin, he being owner of automobile, payments forfeited, and buyer not further obligated.

---

Judgments, 33 C. J., p. 1151, n. 19.
Pleading, 31 Cyc., p. 700, n. 18.
Sales, 35 Cyc., p. 151, n. 43, p. 154, n. 54, p. 699, n. 23, p. 700, n. 26, p. 705, n. 97, 98, 4.

From Baker: C. H. McCOLLOCH, Judge.

In Banc.

On June 1, 1923, the defendant Wm. Gordon, under the terms of a conditional sales contract, agreed

---

3. See 24 R. C. L. 357.
5. Seller's right to recover from purchaser possession or value of property on default under conditional sale contract, see note in 32 L. R. A. 459. See, also, 24 R. C. L. 491.

to buy from plaintiff a 23-passenger Pierce Arrow automobile, "together with all rights to the stage run between Pendleton and Baker City, Oregon," at a price of $5,500. The vendee paid $1,000 on execution of the agreement and the balance of the purchase price was to be paid in monthly installments of $250. Time was made the essence of the agreement. Upon default in payments, plaintiff had the option to terminate the contract without notice and was thereupon entitled to immediate possession of the property wherever situated. All payments could be retained by plaintiff "as his own property, as compensation to him for the use and wear and depreciated value of said goods and chattels, and for his loss and trouble." Title was reserved in the seller until full payment had been made, whereupon plaintiff was to execute a bill of sale for the property sold.

It was further provided:

"In case default is made and this contract terminated as above provided, the said forfeited payments shall be in full satisfaction of all claims against said party of the second part (vendee) arising out of this contract, provided he shall forthwith peaceably deliver up possession of all goods and chattels to said party of the first part (vendor) in good order and condition (reasonable use and wear thereof excepted). But in case said property shall be seriously injured or impaired in value or in case suit shall be brought to recover possession of the same or for its value, or for such injury, then said party of the first part (vendor) shall be entitled in addition to said forfeited payments, to recover full compensation for such injury or impairment, and a reasonable counsel fee in such suit."

Gordon paid $3,100 on the contract, but finally defaulted. Plaintiff alleges that he then "used his

option to ask the return and delivery and possession of said automobile and stage run from defendant, but that said defendants refused and neglects to deliver the same to plaintiff, although often demanded so to do.'' Defendants, Wallace Gordon and the Red Star Stage Co., a corporation, engaged in the operation of a stage line between Baker and La Grande, Oregon, and which was organized and is controlled by Wm. Gordon and his brother Wallace, are made parties to foreclose any interest claimed in and to the property in controversy.

Defendants answered denying that plaintiff owned any interest in the stage line which he contracted to sell and alleged that Wm. Gordon, upon demand of the plaintiff, delivered the automobile to him, thereby terminating the contract. Defendant Wm. Gordon also claims that plaintiff made certain false and fraudulent representations concerning the condition of the automobile, which induced him to enter into the agreement under consideration.

The trial court, without findings of fact, decreed that plaintiff have judgment against defendant Wm. Gordon for $2,700, with interest thereon at 8 per cent per annum from July 15, 1924; that the automobile be sold at public auction; and that the interests of defendants be foreclosed in and to the bus line in question. The decree further provided that ''the automobile shall be first sold at public auction as by law required for the sale of personal property and the proceeds derived from the sale of the same, after paying the costs of the sale, be applied upon the sums adjudged to plaintiff, and in the event the same is not sufficient to pay the same in full, then an execution may issue against the defendant's interest in and to said Bus Run, and sell the same

as provided for the sale of personal property under decree foreclosure, and if any remains after paying the balance of said judgment and expenses, the same shall be paid to the defendant, the Red Star Stage Company.'' Defendants appeal.

REVERSED.  REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Nichols, Hallock & Donald,* with an oral argument by *Mr. J. T. Donald.*

For respondent there was a brief and oral argument by *Mr. O. B. Mount.*

BELT, J.—1. When this suit was instituted plaintiff procured an *ex parte* order appointing Frank W. Venable, his partner, receiver of the defendant Red Star Stage Company to take charge of its terminal offices and otherwise manage and conduct the business. An injunction order, without bond, was issued preven⁻ing defendants from interfering in any manner with the management of this property by the receiver. Appellants, with much reason, complain of the action of the trial court in this regard, but since such proceedings, in our opinion, are foreign to the issues of this case, we pass without further comment.

2, 3. There is no merit in the contention of defendant Wm. Gordon that he was induced to purchase this automobile by reason of alleged fraudulent representations of plaintiff. After having had possession of the machine for about one and one-half years and after having driven it approximately 100,000 miles in the transportation of passengers, the charge of fraud does not sound well. Defendant Gordon does not seek to recover damages; and, if he desired to rescind the contract on the ground of fraud, he should

have done so within a reasonable length of time after discovering that he had been defrauded. Citation of authorities is not deemed necessary.

4. We agree with appellants that at the time of the execution of the contract plaintiff did not have any "rights to the stage run between Pendleton and Baker City, Oregon," which he purported to sell. On cross-examination, in answer to the question: "State whether or not on the first day of June, 1923, or at any other time, you have ever owned or possessed any rights to any stage run between Pendleton and Baker, Oregon, or between La Grande and Baker, Oregon," plaintiff replied: "No, I never owned or possessed any rights in the stage run between Pendleton and Baker, Oregon, or between La Grande and Baker, except that defendant Gordon gave me the run which he owned as security and the run and time schedules which this car immediately created when she went on that run." Notwithstanding that plaintiff in the contract purports to sell the stage run in question, he testified as follows, referring to an alleged conversation with defendant Wm. Gordon: "He told me that he and Mosher were putting these cars on between Pendleton and Baker, Oregon, and that he had the run and that he would give me that run as security for the payment of the balance due on this car which he took in a conditional sale contract. He told me that if he didn't pay for that car I would get the run and the car. Since then he has incorporated his company and tried to beat me out of the run in that manner."

It is difficult to understand how plaintiff could sell this "stage run" and yet receive it as security for payment of the purchase price of the automobile. If the contract did not express the real intentions of the

parties in reference to this matter, proper allegations seeking reformation of the contract should have been made. On this phase of the case there is a fatal variance between the allegations of the complaint and the proof, and we therefore eliminate from further consideration that portion of the contract pertaining to the alleged sale of the "stage run."

5. The vital question is the determination of the rights of the parties to the contract upon default in payment. There are various forms of conditional sales agreements and each case cited must be considered in the light of the particular wording of the contract involved. The contract in the instant cause is unlike that considered in *McDaniel* v. *Chiaramonte,* 61 Or. 403 (122 Pac. 33), *International Harvester Co.* v. *Bauer,* 82 Or. 686 (162 Pac. 856), and *Manley Auto Co.* v. *Jackson,* 115 Or. 396 (237 Pac. 982). In this contract, the vendor, upon default in payment, had the option to terminate it, retake possession of the automobile, and retain payments made. The vendee, in such event, was relieved of any further obligations, as the forfeited payments constituted full satisfaction of any claims arising out of the contract, unless the property when restored was "seriously injured or impaired in value," which is not contended. Plaintiff alleges, although he exercised his option to terminate the contract and demanded possession of the property in question, defendants refused to deliver it to him. Defendants insist the "stage line run" is not involved herein and that the automobile was delivered to plaintiff's agent at the "Elite Garage" in Portland, Oregon, November 1, 1924, and that plaintiff was so notified by letter. The evidence is meager concerning the authority of the agent to accept such delivery, but a letter written by plain-

tiff to Herman Mosher, dated February 9, 1925, wherein he offered to sell the automobile and "stage run" to him for $3,500 and made reference to the "bus stored in the Elite Garage in Portland," tends strongly to the conclusion that plaintiff recognized such delivery and was dealing with the automobile as his property. If defendants refused to deliver possession of the automobile, plaintiff could have obtained complete relief by an action in replevin. Under the terms of this contract and in the light of the evidence, we fail to see any ground upon which to invoke the aid of equity. Assuming that defendant Gordon did not deliver the car, it appears that plaintiff has possession of it as a result of the foreclosure proceedings instituted. If a foreclosure sale was had the plaintiff would be entitled to the proceeds, but since the vendee did not agree to pay the balance no further relief could be obtained: *International Harvester Co.* v. *Bauer, supra.* When plaintiff took possession of the car, either by delivery by defendant Gordon or by levying upon it, the contract terminated and the vendee was relieved of any claims arising thereunder. In other words, plaintiff could have obtained as much relief in an action to replevin the property as he could in a suit to foreclose the contract. The payments were forfeited and there were no equities to foreclose. Result: plaintiff owns the automobile, the payments are forfeited, and defendant Gordon is not further obligated.

The decree of the Circuit Court is reversed and defendants are entitled to costs and disbursements.

Reversed.    Costs Taxed.    Rehearing Denied.