Motion to strike bill of exceptions denied September 24, 1929; argued on merits March 12; reversed July 10; mandate corrected December 30, 1930.

## PACIFIC FINANCE CORPORATION *v.* ELLITHORPE ET AL.

(280 P. 658, 289 P. 1058)

*Howard T. McCulloch* of Portland for appellant.
*G. E. Hamaker* of Portland for respondents.

COSHOW, C. J. ▇ Defendants, who are respondents, have moved to strike the bill of exceptions from the files. This motion is based upon ten separately stated reasons. Eight of these reasons are alleged violations of the rules of the circuit court. One of the others is stated thus: "That it appears from its face, that said bill of exceptions does not comply with the law of the state of Oregon, particularly sections 169 170, 171, and 172, Oregon Laws." The last reason is that said bill of exceptions was not filed in time. The bill of exceptions is a certified copy of all of the evidence, exhibits received, exhibits offered and rejected,

and all other matter material to the decision of the appeal of said cause. The bill of exceptions is duly certified by the Honorable Louis P. Hewitt, who presided at the trial of the circuit court. The attorney for defendants does not point out where the bill of exceptions fails to comply with the Oregon statutes cited. The bill of exceptions does comply with the General Laws, 1929, chapter 356, p. 410, with the exception that it was slightly more than 60 days from the entry of the judgment before said bill of exceptions was certified by the trial judge. This court early in its history held that a trial judge had the discretion of settling and signing a bill of exceptions, even after the time limited therefor had expired: *Che Gong v. Stearns,* 16 Or. 219 (17 P. 781). That decision has been continuously followed since April 16, 1888: *Weinstein v. Wheeler,* 127 Or. 406, 410 (257 P. 20, 271 P. 733).

We think there is no merit in the other contentions of defendants. The bill of exceptions was settled and allowed for the purpose of bringing before this court the errors alleged to have been committed by the trial court. Defendants do not complain that the bill of exceptions is not correct. They make no attempt to show that the same is erroneous in any regard. The rules of procedure are not ordained for the purpose of making it difficult for a litigant to get before the court his claims; but, on the contrary, are adopted for the purpose of facilitating and helping an orderly trial of a case on its merits. Rules requiring notice to be given to an antagonist are required to be strictly enforced, but other rules are generally directory, and where it clearly appears that no possible harm could have resulted from a failure to strictly follow a rule, such failure will not be visited with dis-

cipline. Courts will always try to aid litigants to have their claims fairly and fully presented to the court. The rules will be construed so as to effectuate that result rather than to be a test of the skill of the respective attorneys in the exercise of court procedure. Courts must follow the positive law, but after the court has once acquired jurisdiction most rules of procedure are directory only, and where no harm has resulted from a slight variation therefrom no punishment will be inflicted upon the person failing to proceed strictly and exactly in accord with the letter of the rule. We are not able to see how it is possible for defendants to have suffered in any regard by reason of plaintiff failing to strictly follow the rules referred to in every particular, and for that reason the motion to strike the bill of exceptions is denied.

### On the Merits
(289 P. 1058)

*Howard T. McCulloch* and *Ralph W. Wilbur,* both of Portland, for appellant.

*G. E. Hamaker* of Portland for respondents.

BROWN, J. The amount involved in this action is small, but the principle is of highest importance to the parties hereto, and to all others similarly situated.

Among other things, the contract pleaded by both the plaintiff and the defendants provides:

"In the event the Purchaser fails or neglects to comply with any of the terms, covenants or conditions of this contract, or to make any of the several payments provided for herein when due, or in the event that the Purchaser shall become financially involved or insolvent, or shall be adjudicated a bankrupt, or shall fail to pay the premium on said insurance on demand, or in case of any unusual or unreasonable depreciation in the value of said personal property, the Seller, at his option, and without notice to the Purchaser, may elect to declare the whole purchase price immediately due and payable, or the Seller may, without notice to the Purchaser, declare all of the rights of the Purchaser under this contract terminated, and, without demand first made, and with or without legal process, immediately take possession of said personal property wherever found, using all necessary force so to do, and hold the same discharged from further liability under this contract, and the Purchaser waives all claims for damages due to, or arising from, or connected with any such taking. In the event the Seller elects to take possession of such personal property, all of the rights of the Purchaser under this contract shall immediately terminate, and all payments theretofore made hereunder shall belong absolutely to the Seller; provided, however, that such termination shall not release the Purchaser as to any payments due

and unpaid at the time of such termination; nor shall such termination relieve the Purchaser from the obligation to keep said personal property in as good order and repair as when received, and the Seller may maintain an action against the Purchaser for such payments and also for the amount necessary to put said personal property in as good order and repair as when received by the Purchaser.

\* \* \* \* \*

"Time and each of its terms, covenants and conditions are hereby declared to be of the essence of this contract, and acceptance by the Seller of any payment hereunder, after the same is due, shall not constitute a waiver by him of this or any other provision of this contract.

"\* \* \* This contract may not be enlarged, modified or altered except by endorsement hereon, signed by the parties hereto."

The first assignment of error is predicated upon the overruling of plaintiff's demurrer to the defendants' affirmative plea of estoppel, and to defendants' further answers and counterclaims both of which were predicated upon the alleged waiver by plaintiff of the vendor's rights under the conditional sales contract in controversy.

■ The parties hereto willingly, and, so far as the record discloses, without any fraudulent intent upon the part of either, solemnly made and entered into a contract of sale and purchase containing the following provision:

"Time and each of its terms, covenants and conditions are hereby declared to be of the essence of this contract, and acceptance by the Seller of any payment hereunder after the same is due shall not constitute a waiver by him of this or any other provision of this contract, \* \* \* and this contract may not be enlarged, modified or altered except by endorsement hereon, signed by the parties hereto."

This language is not ambiguous. The words used to express the intent of the parties are plain, and easily understood. It therefore becomes the duty of this court to enforce the contract in accordance with its provisions. See 13 C. J., p. 520, par. 481. At paragraph 485, page 524 of the same work, the editors discuss the restriction to the terms of a contract as follows:

"The intention of the parties is to be deduced from the language employed by them, and the terms of the contract, where unambiguous, are conclusive, in the absence of averment and proof of mistake, the question being, not what intention existed in the minds of the parties, but what intention is expressed by the language used. When a written contract is clear and unequivocal, its meaning must be determined by its contents alone; and a meaning can not be given it other than that expressed. * * *

"It is not the province of the court to alter a contract by construction, or to make a new contract for the parties; its duty is confined to the interpretation of the one which they have made for themselves, without regard to its wisdom or folly, as the court can not supply material stipulations or read into the contract words which it does not contain. * * * A contract must be construed as a whole."

■■ As this court has observed in a number of cases, there is considerable variety in the form and character of conditional sales contracts, and each case arising thereunder must be considered and determined in the light of the wording of the particular contract involved. See *International Harvester Co. v. Bauer*, 82 Or. 686 (162 P. 856). In that case the court, after reviewing the facts and the law applicable thereto, summed up the right and liberty to contract in the following pertinent language:

"As is very aptly said in *White v. Solomon*, 164 Mass. 516 (42 N. E. 104, 30 L. R. A. 537), * * *:

'We are not to construe equities into the contract, but to carry it out as the parties were content to make it. If a man is willing to contract that he shall be liable for the whole value of a chattel before the title passes, there is nothing to prevent his doing so, and thereby binding himself to pay the whole sum.'

"However we may deplore the folly of the defendant in entering into such a contract, or the unbounded avarice of a plaintiff who would enforce it to such an extent, we can not see our way clear to relieve the defendant from the burden of his deliberately assumed obligation."

This doctrine is followed in *First National Bank of Sheridan v. Yocom,* 96 Or. 438 (189 P. 220), where Mr. Justice BEAN, speaking for the court, said:

"The rule adopted in this state upholds the contract of conditional sale as made by the parties themselves."

It is again upheld in *Manley Auto Co. v. Jackson,* 115 Or. 396 (237 P. 982). In that case the court stated its views as follows:

"It is competent for the parties to stipulate with particularity what shall be the effect of a default by the vendee, and what shall be the respective rights and duties of the parties thereafter: Mechem on Sales, § 606."

See, also, *Standring v. Gordon,* 118 Or. 339 (246 P. 361); *Lynch v. Sable-Oberteuffer-Peterson, Inc.,* 122 Or. 597 (260 P. 222, 55 A. L. R. 180); *Oregon Motor Co. v. Carter,* 123 Or. 215 (261 P. 691); *Samuels v. Mack-International, etc., Corp.,* 128 Or. 600 (275 P. 596); *McCormick Harvesting Mach. Co. v. Koch,* 80 Okla. 374 (58 P. 626); Installment Sales, Estrich, §§ 310, 339.

In each of their affirmative defenses the defendants herein expressly pleaded the written contract between the parties, which provided that "the acceptance by the seller of any payment hereunder after the same

is due shall not constitute a waiver by him of this or any other provision of this contract.''

The writer knows of no case, nor are we cited to any, where the precise question at issue in this cause has been determined by our court. However, similar provisions of conditional contracts have been enforced by the courts of other states. Directly in point is the leading case of *Lundberg v. Switzer,* 146 Wash. 416 (263 P. 178, 59 A. L. R. 131). In that case the court, in an opinion sustaining the validity of such a provision, wrote:

''The appellants cite a long line of cases from this and other courts holding that the right of forfeiture can not be exercised without demand and a reasonable opportunity to comply after there has been a waiver of strict performance by the acceptance of delayed payments. About this rule there is no controversy, as it is firmly written into the law. The question here is not as to the rule, but whether it applies where as in this case there is an express agreement by which the parties stipulated that acceptance of delayed payments should not be considered as a waiver of strict performance as to other payments or conditions under the contract. At the time of the sale the parties had a right to place in the contract any terms or conditions which were not unlawful or against public policy: *Union Machinery & Supply Co. v. Thompson,* 98 Wash. 119 (167 P. 95). In providing in the contract that acceptance of the delayed payments should not operate as a waiver of future payments, it can not be said that the parties did anything which contravened any rule of law or went counter to public policy. Where the vendor has waived strict performance by accepting delayed payments, he may by due notice to the purchaser reinstate strict performance: *Walker v. Mc-Murchie,* 61 Wash. 489 (112 P. 500). If the vendor has the right by notice to reinstate strict performance as to subsequent payments after having waived that performance by accepting delayed payments, it would seem to follow that the parties to the contract in the

first instance, if they saw fit to do so, could agree that the acceptance of delayed payments should not operate to waive strict performance as to any future payments. In *Pacific Finance & Investment Co. v. Pierce,* 48 Cal. App. 600 (191 P. 1115), it was held that the acceptance of installments when they were past due did not waive strict performance as to future payments where the contract expressly covenanted that the acceptance of payments after they became due should not operate as a waiver of the forfeiture provision of the contract. In none of the cases cited and relied on by the appellants was there a contract under consideration, so far as the opinions show, which contained a provision like or similar to that in this case where the parties expressly agreed that indulgence by the vendor as to the time of payments should not waive strict performance as to any future payments. The rule of those cases does not fit the facts of the present case.''

In the sale of the motor car which forms the basis of this action, the terms and conditions of the contract therefor, and as to the manner of disposing of the car in case of default by the vendee, were all matters concerning which the seller and the buyer had a right to contract. The answer stated no defense against the terms expressed in the written contract. No reason has been assigned by the defendants, and we know of none, that could release the parties from that contract. The contract as enforced may be a hard one. But the defendants voluntarily became a party thereto, and there is nothing shown by the record before us that would empower us to free them from the clearly expressed conditions set forth therein: *McCormick Harvester Mach. Co. v. Koch et al.,* supra, and other authorities hereinbefore cited. It follows that the court erred in overruling the demurrers to the defendants' pleading.

This cause is reversed and remanded.

CosHow, C. J., BEAN and BELT, JJ., concur.