In re AMERICAN STEEL SUPPLY SYNDICATE, Inc.

Petition of DALTON ADDING MACHINE CO.

(District Court E. D. Michigan, S. D.   April 8, 1919.)

No. 4171.

1. SALES ⬤⟞464—CONDITIONAL SALES—VALIDITY.

A contract of conditional sale, whereby the title remains absolutely and fully in the vendor, to be transferred to the vendee, when and only when the latter has paid in full the amount called for by the contract, and upon default by the vendee in the performance of such contract the vendor to be entitled to reclaim such property in accordance with the terms of the contract, or to sue the vendee for breach of contract to buy, is valid in Michigan.

2. BANKRUPTCY ⬤⟞151—CONDITIONAL SALES—RIGHT OF TRUSTEE IN BANKRUPTCY.

A receiver or the trustee in bankruptcy of a vendee in a conditional sale stands in the shoes of the vendee.

3. BANKRUPTCY ⬤⟞140(1)—RECLAMATION—CONDITIONAL SALES.

A vendor of property under conditional sale contract to one subsequently adjudicated a bankrupt is entitled to reclaim the property.

4. BANKRUPTCY ⬤⟞184(2)—CHATTEL MORTGAGES.

One who sells in Michigan an article to one subsequently adjudicated a bankrupt, reserving only a lien for the purchase price, cannot reclaim such property as against the receiver of the bankrupt, where the contract of sale was not filed under Comp. Laws Mich. 1915, § 11988.

5. CHATTEL MORTGAGES ⬤⟞6—CONDITIONAL SALES—CONSTRUCTION.

Whether a contract of sale of an article evidences a conditional sale, or a transfer of title with the reservation of a lien or a chattel mortgage, depends upon the intention of the parties making the contract, as ascertained by the correct construction of its terms.

6. COURTS ⬤⟞89—STARE DECISIS—CONSTRUCTION—INTENTION.

If it has been authoritatively decided that certain language in one contract indicates a certain intention, such intention must be inferrrd from the use of such language in other similar contracts.

7. CONTRACTS ⬤⟞144—WHAT LAW GOVERNS.

A contract of sale of property sent to, and to remain in, a certain state, in the conduct of business in operation there, is governed, as to its construction, by the established law of that state.

8. COURTS ⬤⟞366(14)—BANKRUPTCY COURTS—FOLLOWING STATE LAW.

In considering, in bankruptcy proceedings, the construction and legal effect to be given to a contract of a certain state, the federal court will follow the settled rule in force in such state.

9. CHATTEL MORTGAGES ⬤⟞6—SALES—TITLE RETAINING CONTRACT.

In Michigan, title retaining contract of sale, reserving right in vendor to bring action to recover purchase price from vendee, constitutes an absolute sale with retention of title, operating merely as a chattel mortgage lien to secure the payment of such price.

In Bankruptcy. In the matter of the American Steel Supply Syndicate, Incorporated, Bankrupt. On petition of the Dalton Adding Machine Company for reclamation. Petition denied.

Frank Lawhead, of Detroit, Mich., for petitioner.

Clark, Emmons, Bryant & Klein and Welsh, Bebout & Kahn, all of Detroit, Mich., for receiver.

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

TUTTLE, District Judge. This matter is before the court in reclamation proceedings originally brought before the referee for this division, in which the referee has filed a report certifying to this court a certain question arising in the proceedings and involving the construction and effect to be given to the contract under which the machine sought to be reclaimed by the petitioner was delivered to the bankrupt. The referee states the question involved and certified by him as follows:

"The question presented for determination is whether or not the contract in question is a conditional sale contract, or an absolute transfer of title with a reservation in the seller by way of security or chattel mortgage."

It is undisputed that on or about May 10, 1918, the petitioner and the bankrupt entered into a contract which was in the form of an order by the bankrupt, expressly approved and accepted in writing by the petitioner, the material language and terms of which are as follows:

"To the Dalton Adding Machine Company, Cincinnati, Ohio: Please enter our order for the following, and deliver, f. o. b. Detroit, one Dalton adding, listing, and calculating machine, for which we agree to pay to the order of the Dalton Adding Machine Company, Cincinnati, Ohio, $360.00 [here appear the words "list price of equipment must appear here"], thirty (30) dollars herewith and thirty (30) dollars each month hereafter until paid in full. Payments to be made the 1st of the month. A discount of 2 per cent. shall be allowed on the net amount of this order for full cash payment within 10 days from date of invoice. The conditions printed on the reverse side hereof constitute a part of this order."

On the back of this contract appear the following provisions:

"(1) The said Dalton adding machine equipment is to be covered by our written guaranty, whereby you shall agree to make good any defects of material or workmanship for the period of one year from date of purchase.

"(2) Title to the within described property shall remain in you until the purchase price or any judgment therefor has been paid in full, and the within signer hereby agrees not to remove the said property from the place of original delivery so long as any part of the purchase price remains unpaid, without first securing the written consent of the Dalton Adding Machine Company. The within signer further agrees to assume the risk of loss and damage to said property.

"(3) In case of failure to make any payment in time and manner as herein provided, the entire unpaid balance of the purchase price shall become immediately due and payable; and you may, without legal process, retake said property, and in such event the within signer hereby agrees to make delivery thereof to you immediately upon request.

"(4) In event of your retaking said property as above provided, any amount that may have been paid thereon shall be considered as payment for use, ordinary wear and depreciation of said property while in the possession of the within signer, and in the absence of specific provision of law to the contrary, shall be retained by you. If the amount so paid does not cover the reasonable rental value of said property, the within signer hereby agrees to pay you on demand the balance of such reasonable rental. Nothing in this order shall be construed as obligating you to accept return of property tendered in lieu of purchase price agreed to be paid.

"(5) All statutory provisions as to retaking and resale of the property within described are hereby expressly waived. If a claim hereunder is placed in an attorney's hands for collection, ten per cent. shall be added thereto and paid as attorney's fees.

"(6) This order covers all agreements between the within signer and the Dalton Adding Machine Company, either express or implied; and when ap-

proved by said company at its executive office becomes a contract between the parties as purchaser and seller respectively. It is expressly agreed that this order shall not be countermanded."

It appears that $90 has been paid on this contract, and the balance of $270 remains unpaid. It is also undisputed that subsequent to the delivery of said machine numerous creditors, without knowledge or notice of said contract, extended credit to the bankrupt for goods sold and delivered in a total amount exceeding the balance due thereon, that the contract had not been filed in accordance with any of the recording laws of the state of Michigan, and that the petitioner demanded the return of the property, which was refused. Shortly after the adjudication of the bankrupt on an involuntary petition, the petitioners herein filed this petition, praying for an order requiring the receiver to deliver to it the machine covered by this contract or to pay to it the balance due for said machine, $270. The referee was of the opinion that petitioner was entitled to the order prayed for, but instead of entering such order he certified the question involved to the court, as already stated.

[1, 2] The question presented then, is whether the contract in question is one of conditional sale (that is, of bailment), or of absolute transfer of title with a retention of title in the seller merely by way of security (that is, a chattel mortgage). If the transaction constituted a conditional sale, the title remained absolutely and fully in the vendor, to be transferred to the vendee when, and only when, the latter had paid in full the amount called for by the contract; and upon default by the vendee in the performance of such contract the vendor would be entitled to reclaim such property in accordance with the terms of the contract, or to sue the vendee for breach of contract to buy, if he had agreed to buy the property. That such a contract of conditional sale is valid in Michigan, and that the receiver or the trustee in bankruptcy of the vendee therein stands in the shoes of the latter in regard to such contract, are, of course, propositions too well settled to require discussion.

If, however, this contract should be construed, not as one of conditional sale, but as one of absolute sale, under which the legal title was transferred from the petitioner to the bankrupt, with a reservation of title in the vendor by way of security merely, in that event the title to the property became, by such contract of sale, vested in the vendee, the bankrupt, subject to a right of lien in the vendor, the petitioner, to secure payment of the purchase price (that is, a chattel mortgage), and upon the adjudication in bankruptcy and the appointment of the receiver the latter succeeded to the rights of such vendee in this property, subject to this outstanding chattel mortgage.

[3, 4] Section 11988, Michigan Compiled Laws of 1915, provides that "every mortgage or conveyance intended to operate as a mortgage of goods and chattels * * * shall be absolutely void as against the creditors of the mortgagor, * * * unless the mortgage or a true copy thereof shall be filed" in accordance with the provisions of the statute.

As the contract in question was never recorded under this statute, it becomes important to determine whether it constituted a conditional

sale or an absolute sale from vendor to vendee, with chattel mortgage from the latter to the former to secure the purchase price. If it be an instrument of the character first mentioned, petitioner is entitled to reclaim its property; if, however, the contract be of the kind last indicated, the petition of the vendor should be denied, for the reason that in that case it has already sold this property to the bankrupt, and holds no valid lien thereon, as against the receiver.

[5] The answer to this question depends upon the intention of the parties making the contract under consideration, as ascertained by the correct construction of its terms. Atkinson v. Japink, 186 Mich. 335, 152 N. W. 1079; Holcomb & Hoke Mfg. Co. v. Cataldo, 199 Mich. 265, 165 N. W. 941; John Deere Plow Co. v. Mowry, 222 Fed. 1, 137 C. C. A. 539 (C. C. A. 6); In re Stoughton Wagon Co., 231 Fed. 676, 145 C. C. A. 562 (C. C. A. 6); Ford Motor Co. v. Union Motor Sales Co., 244 Fed. 156, 156 C. C. A. 584 (C. C. A. 6).

[6] In this case, therefore, as in similar cases, it is necessary to determine what was the intention of the parties in entering into the contract involved and under consideration. If, however, it has been authoritatively decided that certain language in one such contract indicates a certain intention, such intention must be inferred from the use of such language in other similar contracts.

It is claimed by the receiver herein that according to the rule laid down in recent decisions of the Michigan Supreme Court the contract involved in the present case must be held to be an absolute sale, subject to a retention of title in the vendor merely by way of security and that such contract therefore is, in legal effect, a sale to the bankrupt together with a chattel mortgage from the latter to the petitioner herein. This contention is strenuously disputed by the petitioner, and was rejected by the referee, as hereinbefore indicated.

[7] Inasmuch as the contract in question concerned property which was sent to, and was to remain in, Michigan thereunder, in the conduct of a business in operation there, it must be held to be a Michigan contract, and as such should be construed according to the established law of that state. Union Trust Co. v. Bulkeley, 150 Fed. 510, 80 C. C. A. 328 (C. C. A. 6); Title Guaranty & Surety Co. v. Witmire, 195 Fed. 41, 115 C. C. A. 43 (C. C. A. 6).

[8] It is, of course, well settled that in considering, in bankruptcy proceedings, the construction and legal effect to be given to a contract of a certain state, the federal court will follow the settled rule in force in such state. Bryant v. Swofford Bros. Dry Goods Co., 214 U. S. 279, 29 Sup. Ct. 614, 53 L. Ed. 997; In re Ducker, 134 Fed. 43, 67 C. C. A. 117 (C. C. A. 6); Potter Mfg. Co. v. Arthur, 220 Fed. 843, 136 C. C. A. 589, Ann. Cas. 1916A, 1268 (C. C. A. 6); In re Bettman-Johnson Co., 250 Fed. 657, —— C. C. A. —— (C. C. A. 6).

What, then, is the rule according to the law of Michigan on the construction of such a contract? Until recently the decisions of the Michigan Supreme Court on this subject seemed to furnish no such clear and definite rule as would be controlling in this court. John Deere Plow Co. v. Mowry, supra.

[9] Since, however, the decision of the Michigan Supreme Court in the case of Atkinson v. Japink, supra, and particularly since its re-

cent decision in Young v. Phillips, 202 Mich. 480, 168 N. W. 549, and, on rehearing, 203 Mich. 567, 169 N. W. 822, I am satisfied that the rule is now settled in Michigan that an agreement providing for the transfer of goods whereby title thereto is retained in the transferror, but the latter reserves the right to bring an action against the transferee for the recovery of the purchase price of such goods, should be construed as an absolute sale with a reservation of title for security merely, and therefore in legal effect a chattel mortgage.

Being further satisfied that this present rule is not so inconsistent with any well-established rule of property previously in force in Michigan as to warrant this court in refusing to follow it, I am of the opinion that it should be followed in the present case. In Atkinson v. Japink, supra, the rule governing the construction of title retaining contracts was laid down and announced as follows:

"When the absolute title is reserved, retention thereof by the vendor is inconsistent with an action to recover the debt."

In Young v. Phillips, supra, the question whether a certain contract was a conditional sale or an absolute sale with reservation of title merely as security was involved. The third clause of the contract provided:

"That the title to said property and right of possession thereto shall be and remain in said first party until said sum of $750 [the purchase price] and interest, and any judgment rendered therefor shall be paid in full."

The question of the admissibility of certain testimony as to the intention of the parties in executing such contract was argued by counsel before the Supreme Court, which declined to consider such question, in the following language:

"In our opinion it becomes unnecessary to discuss the question of the admissibility of the testimony of Mutchler, or its effect, as from an examination of the contract of sale it appears that the title to the property was reserved to the vendor as security merely, and that the conditions therein did not amount to an absolute reservation of title in the vendor. In the recent case of Atkinson v. Japink, 186 Mich. 338, 152 N. W. 1079, this court, speaking through Mr. Justice Ostrander, said with reference to this legal question: 'An examination of our own and of the decisions of other courts leads to the conclusion that they sustain, in the main, two propositions: First, that when the absolute title is reserved retention thereof by the vendor is inconsistent with an action to recover the debt.' * * *

"An examination of the third clause of the contract here in question shows that it was the intention of the parties that an action might be brought to recover the debt, and that the title to the property might still remain in the vendor to secure the payment of the debt, because it says in terms that: 'The title to said property and right of possession thereto shall be and remain in said first party until said sum of $750, and interest and any judgment rendered therefor, shall be paid in full.' * * *

"The court might therefore very well have directed the jury that the contract in question showed that the title to the property was retained in the vendor simply for security, and have thus determined the very question, which was submitted to the jury to determine under the special question, against the contention of the plaintiff and appellant.

"It being admitted that the contract, which we hold was taken as security, was never filed with the city clerk of the city of Detroit, it became absolutely void as against creditors of the mortgagor, or the person giving the security, by virtue of the terms of section 11988 of the Compiled Laws of 1915.

"Being, therefore, of the opinion that the defendant Phillips had a right

to levy upon the property, and was rightfully in possession thereof, it follows that the judgment must be and is hereby affirmed."

After the filing of this opinion a rehearing was requested and granted. As the court stated in its opinion on such rehearing:

"Counsel representing other interests than those immediately involved" were "permitted to file briefs as amici curiæ, and the various contentions advanced by counsel were fully argued and ably briefed."

After carefully reviewing the subject, and pointing out that the question whether such instrument is a conditional sale or an absolute sale with reservation of title as security, depends upon the intention of the parties, the court adhered to its former opinion, using the following language:

"It may be conceded that the state of the law was somewhat confusing before the decision in Atkinson v. Japink, supra, and it may be difficult to harmonize the various decisions of the court on this question; * * * but with the tests so clearly announced in the Atkinson Case, it seems to us that there should be no difficulty encountered in attempting to determine the character of any of this class of instruments by applying the tests therein set forth.

"We think that decision announced a rule and tests which can be readily applied, and was of distinct value because of that fact. If, of the two elements, reservation of title and the right to maintain an action to recover the debt, the latter is missing, there is no inconsistency, and * * * the conclusion may be immediately drawn that there was no intention to make an absolute sale with the reservation of lien by way of security. Such a contract becomes a pure conditional sale, under which the goods can be retaken by the vendor, even from third parties, and the vendor may still have an action for damages for breach of contract against his vendee, if he has suffered any such damage. But if the instrument purports to reserve title, and to give a right of action to recover the debt without passing title, the two being inconsistent according to the test in Atkinson v. Japink, it must be concluded that the intent of the parties was to make an absolute sale with the reservation of lien by way of security."

This language is plain and positive, and it seems clear that it is now the settled rule in Michigan that, where a title retaining contract reserves the right in the vendor to bring an action to recover the purchase price from the vendee, such a contract must be held to constitute an absolute sale, with the retention of title operating merely as a chattel mortgage lien to secure the payment of such price. Applying this rule to the contract involved in this case, it is plain that such contract provides for the reservation by the petitioner of the right to sue the bankrupt for the purchase price fixed therein. It will be noted that it is provided that "title to the within-described property shall remain" in the petitioner "until the purchase price or any judgment therefor has been paid in full." This is substantially the same language as that used in the contract involved in Young v. Phillips, supra, and which was there held to render the contract one of absolute sale. It is also provided in the contract in the instant case that "in case of failure to make any payment in time and manner as herein provided the entire unpaid balance of the purchase price shall become immediately due and payable." This contract further provides that—

256 F.—56

"nothing in this order shall be construed as obligating" the petitioner "to accept return of property tendered in lieu of purchase price agreed to be paid."

Finally, it is provided that the instrument, "when approved by said company at its executive office, becomes a contract between the parties as purchaser and seller, respectively." These provisions in the contract sufficiently indicate an intention on the part of the parties thereto that the vendor should have the right to recover the purchase price, *as such,* from the vendee. Under the rule now settled in Michigan the reservation of such right is inconsistent with the retention of the absolute title to the property, and such retention must be regarded as intended merely as security for the payment of the purchase price and in effect a "conveyance intended to operate as a chattel mortgage," within the meaning of the Michigan statute providing for the recording of such an instrument. As, therefore, such instrument was not recorded as so required, the part thereof intended to operate as a mortgage was void as against creditors of the bankrupt becoming such after its execution, as represented by the receiver herein.

The question certified for determination must be answered in accordance with the terms of this opinion, and an order entered denying the petition for reclamation.