## In re GOORMAN.

(District Court, E. D. Michigan, S. D. August 12, 1922.)

No. 5027.

1. **Bankruptcy ⊂⊃184(2)—Unrecorded chattel mortgage executed by bankrupt void as against trustee.**

  Where a seller makes an absolute sale of a chattel to one subsequently adjudicated a bankrupt, an unrecorded purchase-money chattel mortgage on the chattel sold is void as against the trustee in bankruptcy.

2. **Contracts ⊂⊃144—Law of place of making and of performance controls.**

  Where a contract was made and was to be performed in Michigan, its construction must be determined by the laws of that state.

3. **Chattel morgages ⊂⊃6—Instrument held a chattel mortgage, and not a conditional sale.**

  A contract of sale of an entire business, including book accounts and all work in the process of completion, seller reserving title as security, and buyer agreeing to pay for all work and materials after a stated date and the full price in installments, regardless of possible reclamation of the property by the seller, held a chattel mortgage, and not a conditional sale, notwithstanding a provision that seller, on default in any payment, might declare the entire sum remaining unpaid due and repossess himself of the property sold.

4. **Contracts ⊂⊃155—Construed against drawer.**

  Doubts or ambiguities in a contract should be resolved against the party drawing it.

In Bankruptcy. In the matter of the bankruptcy of Jacob Goorman, doing business as the American Carriage & Wagon Works. On petition to review a referee's order denying a creditor's petition for the reclamation of property in the possession of the trustee in bankruptcy. Order affirmed.

John M. Burns, of Detroit, Mich. (Hugh V. Williams, of Detroit, Mich., of counsel), for petitioner.

Friedman & Mayers, of Detroit, Mich. (Myron A. Schlissel, of Detroit, Mich., of counsel), for trustee.

TUTTLE, District Judge. This is a petition to review an order of one of the referees in bankruptcy for this district, denying a petition filed by a creditor for the reclamation of certain property now in the possession of the trustee in bankruptcy in this cause, but claimed by such creditor, the petitioner herein, to belong to said petitioner by the terms of the written contract hereinafter considered, under which petitioner delivered said property to the bankrupt. Such contract was not filed for public record, as was necessary, under the laws of Michigan, if it was intended to operate as a chattel mortgage.

[1] The sole question presented is whether this contract, construed according to its language alone, and unaided by evidence of any ex-

trinsic facts or circumstances, is a contract of pure conditional sale, actually reserving title in the vendor (the petitioner) until performance by the vendee (the bankrupt, now represented by the trustee in bankruptcy) of the obligations therein required to be performed by him, or whether, on the other hand, said contract is one of actual sale, by which the title to the property so sold passed to such vendee subject to a chattel mortgage thereon, given by the terms of the contract to the vendor as security for the payment of the debt created by such contract, including the purchase price of said property. If the contract be of the legal character and effect first mentioned, namely, one wholly reserving title in the vendor until payment of the debt mentioned, it was not required to be filed, and the title to the aforesaid property is still in the vendor, who is entitled to recover the possession thereof. If, however, said contract be one of absolute sale, with the so-called retention of title operating merely as a lien to secure the payment of said debt, then, having the legal nature and effect of a chattel mortgage, and not having been filed for record, it is void as against said trustee, and the property in question is part of the bankrupt estate, free and clear from any lien or incumbrance arising from such void chattel mortgage. In re American Steel Supply Syndicate (D. C.) 256 Fed. 876.

[2] The construction of this contract depends, of course, upon the intention of the parties thereto, as expressed therein; and as the said contract was made and was to be performed in the state of Michigan, the question as to its construction must be determined according to the applicable laws of that state, if such laws have established a clear, definite rule of property upon the subject. In re Nader (D. C.) 276 Fed. 123, and cases there cited.

[3] The contract in full is as follows:

"Know all men by these presents that Thomas Nimmo, of the city of Detroit, party of the first part, now conducting business under the name and style of the American Carriage & Wagon Works, has agreed to sell the said business so conducted by him, including all raw material on hand, machinery, tools, fixtures, furniture, and equipment which are located on the premises known as 489–91–93 Michigan avenue, in the city of Detroit, and including lumber and other materials located on lot at Eleventh and Michigan avenues, together with all work in the course of completion, to Isador B. Goodman and Jacob Goorman, also of the city of Detroit, parties of the second part, and they, the said parties of the second part, agree to purchase the same upon the following terms and conditions:

"(1) The parties of the second part agree to pay to the party of the first part the sum of $6,500 as follows: $500 upon the signing of this contract, receipt of which is hereby confessed and acknowledged; $2,500 on or before June 30, 1920; and the remaining sum of $3,500 in monthly installments of $100 or more on or before the 30th day of each succeeding month thereafter until all sums due hereunder have been paid, together with 6 per cent. interest on all unpaid balances, the monthly payments to be inclusive of principal and interest payments.

"(2) The party of the first part hereby assigns, sells, and transfers to the parties of the second part any and all book accounts or credits due or owing to the said business which have accrued and have been paid since the 1st day of June, 1920, except as hereinafter provided. The exceptions just referred to are as follows:

"Account due from T. P. Sullivan for a hearse body and other work done on the same. William Gray, work on Buick car. Mr. Hessig, work done on

King car, provided, however, that any charges which may be collected for fenders on this car shall belong to the parties of the second part. Bennett Williamson, on van of Shekell Bros.

"All work and labor necessary to complete the jobs mentioned in the foregoing paragraph shall be furnished by the parties of the second part at their expense.

"(3) The parties of the second part agree to pay for all merchandise and other items delivered after June 15, 1920, and to assume and pay for all labor employed after June 15, 1920, in connection with the said business.

"(4) The parties of the second part shall have immediate and continuous possession of the said business and right to operate the same so long as they shall not be in default of any of the terms or provisions by them to be carried out or to be performed as hereinafter set forth.

"(5) The title to the business and all chattels and property hereby sold shall be and remain in the party of the first part until such time as the parties of the second part shall have paid the full sum of $6,500, together with interest thereon, and carry out all of the other provisions of this contract by them to be performed.

"(6) The parties of the second part shall immediately insure all of the merchandise, fixtures, furniture, and machinery and other property hereby conveyed, in favor of the party of the first part as his interest may appear, in such companies and amounts as shall be satisfactory to the party of the first part, not exceeding $6,000.

"(7) The party of the first part agrees that, if the parties of the second part carry out the provisions of this agreement, he will not again enter into a similar line of business in the city of Detroit, Michigan, for a period of two years from the date hereof, and the parties of the second part shall have the exclusive right to the use of the name of the American Carriage & Wagon Works.

"(8) All charges on indebtedness which have been incurred or accrued against the said business up to and including June 15, 1920, are assumed and shall be paid by the party of the first part, including government tax.

"(9) The party of the first part agrees to secure for the parties of the second part an assignment of the lease covering the premises now occupied by him as above described, which said lease shall continue for a period of not less than one (1) year from April 1, 1920, with the privilege in them of renewal for one additional year.

"(10) If the parties of the second part shall fail or neglect to make any of the payments specified, then the party of the first part may, at his option, declare the entire sum then remaining unpaid to be due and payable, and he may, at his option, re-enter the premises wherever the said merchandise, fixtures, furniture, machinery, or other property hereby sold is located, and repossess himself thereof, retaining all sums theretofore paid by the parties of the second part as liquidated damages for the use, rent, wear, tear, and depreciation of the items hereby sold, or intended so to be, and the parties of the second part hereby expressly authorize and empower the party of the first part, his agents, representatives, attorneys, and assigns so to do. All payments herein provided for shall be made by the parties of the second part at the office of first party's attorney, John McNeil Burns, in the Penobscot Building, city of Detroit, or at such other place as the party of the first part may designate in writing.

"In witness whereof the parties hereto have set their hands and seals this 17th day of June, A. D. 1920."

Considering this contract in its entirety, I cannot avoid the conclusion that it must be construed as one of absolute sale, with retention of title as security only. It will be observed that the property involved in the contract comprises an entire business, including all raw and other materials, and all work in process of completion, the title to which kind of property would ordinarily and naturally be intended by the parties to vest absolutely in the vendee, in view of the

evidently intended consumption, conversion, or other disposition, by the vendee, of such materials and uncompleted work. The vendee agrees to pay the full amount of the purchase price with interest, in certain installments monthly, "until all sums due hereunder have been paid," regardless of the possible reclamation of the property by the vendor. Such an agreement to pay the sum due under the contract is, in the words of the Michigan Supreme Court in the case of National Cash Register Co. v. Paul, 213 Mich. 609, 182 N. W. 44, 17 A. L. R. 1416, speaking through Justice Stone, "not the language of a bailment, but of a purchase." The vendor, in the express words of the contract, thereby "assigns, sells, and transfers" to the vendee all book accounts of the business, with a few exceptions. These are clearly "words of bargain and sale," which kind of words was referred to, in the case last cited, as significant in construing a somewhat similar contract. The promises, by the vendee in the present contract, to furnish all labor necessary to complete certain work mentioned in the contract, to pay for all merchandise and other items delivered after a certain date, and to assume and pay for all labor employed after such date "in connection with the said business," to assume and pay "all charges on indebtedness which have been incurred or accrued against the said business up to and including June 15, 1920, * * * including government tax," surely these are promises of the owner of the business and property to which such matters relate and with which they are connected.

It is inconceivable that any one else would assume such obligations of the business. The provision in the tenth paragraph, that "if the parties of the second part shall fail or neglect to make any of the payments specified, then the party of the first part may, at his option, declare the entire sum then remaining unpaid to be due and payable, and he may, at his option, re-enter the premises wherever the said merchandise, fixtures, furniture, machinery, or other property hereby sold is located, and repossess himself thereof," means, in my opinion, that on the failure by the vendee to make any payment as specified in the contract the vendor may, if he desire, declare the entire unpaid balance of the purchase price immediately due and recoverable, without the necessity of his waiting for the expiration of the time otherwise given to the vendee to pay such price. This paragraph also undertakes, by its language, to permit the vendor, upon such failure by the vendee, to "repossess himself" of "the property hereby sold," without any agreement or obligation on his part to credit the vendee, upon the agreed purchase price, with any sums realized by the vendor from such property or from any resale thereof by him. Thus construed, what is the legal effect of this language quoted from the tenth paragraph of the contract?

The rule applicable to such a contract as that here involved was stated by this court in the case of In re American Steel Supply Syndicate (D. C.) 256 Fed. 876, on page 880, as follows:

"I am satisfied that the rule is now settled in Michigan that an agreement providing for the transfer of goods whereby title thereto is retained in the transferor, but the latter reserves the right to bring an action against the

·transferee for the recovery of the purchase price of such goods, should be construed as an absolute sale with a reservation of title for security merely, and therefore in legal effect a chattel mortgage."

This is, in my opinion, still the rule in force in Michigan, and is applied by the Supreme Court of said state in determining the legal effect of such contracts. In Atkinson v. Japink, 186 Mich. 335, on page 338, 152 N. W. 1079, on page 1080, it was said:

"When the absolute title is reserved, retention thereof by the vendor is inconsistent with an action to recover the debt."

In Young v. Phillips, 202 Mich. 480, on page 484, 168 N. W. 549, on page 550, the following language was used:

"An examination of the third clause of the contract here in question shows that it was the intention of the parties that an action might be brought to recover the debt and that the title to the property might still remain in the vendor to secure the payment of the debt. * * * The court might, therefore, very well have directed the jury that the contract in question showed that the title to the property was retained in the vendor simply for security."

On rehearing of the decision in the case last cited, the Michigan Supreme Court reaffirmed such decision (203 Mich. 566, 169 N. W. 822), saying, among other things (203 Mich. on page 569, 169 N. W. 823):

"If, of the two elements, reservation of title and the right to maintain an action to recover the debt, the latter is missing, there is no inconsistency, and * * * the conclusion may be immediately drawn that there was no intention to make an absolute sale with the reservation of lien by way of security. Such a contract becomes a pure conditional sale, under which the goods can be retaken by the vendor even from third parties, and the vendor may still have an action for damages for breach of contract against his vendee, if he has suffered any such damage. But if the instrument purports to reserve title, and to give a right of action to recover the debt without passing title, the two being inconsistent, * * * it must be concluded that the intent of the parties was to make an absolute sale, with the reservation of a lien by way of security."

The same rule is followed in National Cash Register Co. v. Paul, 213 Mich. 609, 182 N. W. 44, 17 A. L. R. 1416.

Applying such rule to the tenth paragraph of the present contract, as the vendor is thereby expressly given the right to "declare the entire sum then remaining unpaid to be due and payable," he is thereby necessarily authorized to enforce such right; that is, to sue to recover the "entire sum" (including, obviously, the purchase price) thus "payable" in full. This indicates a previous transfer to the vendee of the property for which such entire sum is so payable. It is sufficiently clear that in essence and substantial effect the meaning of this language is that the vendor has the right to sue the vendee for the purchase price (when due and payable according to the terms of the contract) of the property which has been, as said paragraph itself recites, "sold" to said vendee. The attempt, therefore, in the same paragraph, to give the vendor the right at his option to repossess

himself of such property, being inconsistent with the right previous-ly conferred on him to sue for the price thereof, cannot have effect, and must be disregarded. The following language of the Michigan Supreme Court in National Cash Register Co. v. Paul, supra, is apt and applicable here:

"It is true that we find present in this contract, not only an evident attempt to make an absolute sale, but at the same time an attempt to put the transaction in the form of a conditional sale, so that the vendor can take either position; in other words, an attempt 'to ride with the hunter and run with the hounds.' But, taking the entire contract and proceeding into consideration, we are of the opinion that we have a case of chattel mortgage, and not of conditional sale."

[4] It is admitted that the contract was drawn by the petitioner, through his counsel, and so, under familiar law, any doubts or ambiguities therein should be resolved against said petitioner.

For the reasons stated, I reach the conclusion that the referee was correct in holding the contract in question to be an absolute sale with chattel mortgage, and the order complained of is affirmed.