---

## In re AMES.

(District Court, E. D. Michigan, N. D.   September 22, 1922.)

No. 1098.

1. **Bankruptcy ⬳184(2)—Chattel mortgages ⬳6—Sales contract held intended as mortgage, and invalid for want of record.**

   A contract under which store fixtures were delivered to bankrupt, in which he was called "buyer," and the other party "seller," and by which he was absolutely obligated to pay the "purchase price" in installments, with interest, which also contained a provision retaining title in the seller until full payment, with the option in case of default to rescind the contract, or affirm and sue "as for a breach," *held*, under the law of Michigan, a conveyance of title with a reservation, intended to operate as a chattel mortgage, within Comp. Laws Mich. 1915, § 11988, and invalid against the trustee for want of record.

2. **Courts ⬳366(14)—Contracts governed by law of state.**

   Where a contract by a bankrupt was made and to be performed within a state, the decisions of the highest court of the state are controlling as to its construction and effect.

In Bankruptcy.   In the matter of Ernest E. Ames, bankrupt.   On review of order of referee denying petition of the Peter Smith & Sons Grocery Company for reclamation of property.   Affirmed.

Edward S. Clark, of Bay City, Mich., for petitioner.

Coumans & Gaffney, of Bay City, Mich., for trustee.

TUTTLE, District Judge.   This is a petition to review an order of one of the referees in bankruptcy, denying a petition for the reclamation of certain personal property furnished by the petitioner to the bankrupt under a certain written contract between said petitioner and said bankrupt, which was not filed for public record.   The property mentioned, consisting of certain fixtures and store equipment, was not furnished to the bankrupt to be resold by the latter, who was not engaged or about to engage in the business of buying and selling such property. Said property was in the possession of the bankrupt at the time of the filing of the petition in bankruptcy herein, and thereupon came lawfully into the possession of the bankruptcy court and of the trustee in bankruptcy, by whom it was sold, under a stipulation between the interested parties, pursuant to which the proceeds realized at such sale are retained by said trustee in place of the property so sold, without prejudice to either party.

[1] The only question presented for decision is whether the aforesaid contract under which the said property was furnished to the bankrupt is a contract of pure conditional sale reserving absolute title in

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
283 F.—30

the petitioner until the performance of the condition (the payment of the purchase price, with the interest due thereon), on which the title shall pass, or whether said contract is one of absolute sale with so-called retention of title merely as security for the payment of the purchase price. The contract in full is as follows:

"It is hereby agreed as follows, by and between Peter Smith & Sons Grocery Company, a Michigan corporation, of Detroit, Michigan (hereinafter called the 'seller'), and Ernest E. Ames, of Bay City, Michigan (hereinafter called the 'buyer'):

"The seller hereby agrees to sell and the buyer agrees to buy the following fixtures and equipment (hereinafter called 'the property'), now located in the store known as 400 Center avenue, Bay City, Michigan, viz.:

"List No. 1.

1 National electric cash register.
1 glass showcase.
3 glass display cases.
3 Walker counters.
2 counters.
1 12' counter.
1 counter refrigerator.
All shelving in store.
1 McCray refrigerator.
2 Detroit scales 100 lb. capacity.
3 Detroit scales 10 lb. capacity.
1 Toledo barrel scale No. 30.
1 counter platform scale.
1 office booth.
1 flour stand.
5 window shades.
1 paper baler.
1 vinegar pump.
1 banana rack.

1 broom rack.
2 paper racks.
1 package sealer.
1 pencil sharpener.
2 Howe barrel trucks.
1 stool.
15 glass jars.
All lighting fixtures.
1 platform scale.
2 cheese display cases.
3 paper holders.
1 grindstone.
1 ceiling fan.
1 electric fan.
1 office safe.
1 Burroughs adding machine.
1 electric heater.
All delivery boxes.
2 Hobart electric coffee mills.

"List No. 2.

1 National cash register.
1 30' counter.
Meat glass protector.
1 Crysler & Koppin refrigerator.
1 Detroit barrel scale 30 lb. capacity.
1 Dayton barrel scale.

1 meat rack.
3 meat blocks.
1 platform scale.
1 Hobart meat chopper.
Equipment in refrigerator.

"The purchase price shall be the sum of $4,700, payable as follows, viz.: Five hundred dollars in hand paid, the receipt of which is hereby acknowledged, and the balance in monthly payments of $100 each on the 1st day of each month, beginning with May 1, 1920. The buyer agrees to pay the same accordingly.

"All unpaid installments of the purchase price shall bear interest at 6 per cent. per annum payable semiannually.

"The title to the property and to each item thereof shall remain in the seller, until the entire purchase price, with interest thereon, is fully paid.

"The buyer shall pay the taxes, if any, which may be assessed or levied against the property, and shall also pay all other costs and charges reasonably necessary to protect and preserve the property until it is fully paid for. He shall keep the property insured against loss by fire, to an amount not less than $4,000, in companies satisfactory to the seller, and with loss, if any, payable to the seller as its interest may appear. The insurance policies shall on demand be delivered to the seller.

"The buyer shall not sell, assign, or dispose of, or attempt to sell, assign, or dispose of, the whole or any part of the property, or remove or attempt to

remove the whole or any part thereof from the premises aforesaid, without the written assent of the seller.

"In case of the buyer's failure to pay any taxes, insurance, or other costs or charges necessary to protect or preserve the property then the seller may pay the same and add the amount thereof to the amount otherwise payable by the buyer, under this agreement, with interest thereon at the rate of 6 per cent. per annum payable semiannually.

"If default is made in the payment of any installment due on this contract, or of any part thereof, or interest thereon, or of the insurance premiums, taxes, or other costs or charges aforesaid when and as they become due and payable respectively, then the whole sum still unpaid shall, at the option of the seller, without notice, become at once due and payable, any provision herein to the contrary notwithstanding.

"If the buyer shall make default in or shall be guilty of any breach of any of the terms or provisions of this contract, or if the property aforesaid is seized or levied upon or attempted to be seized or levied upon under any legal process issued against the buyer, then it shall be lawful for the seller to forthwith enter upon the buyer's premises, or any place or places where the property aforesaid or any part thereof may be, and retake possession thereof, and dispose of the same without being accountable to the buyer for the proceeds thereof, or for the repayment of any sums theretofore paid thereon by the buyer. In such case any sums theretofore paid shall be treated as liquidated damages for the breach of this agreement by the buyer and as a fair rental for the property aforesaid.

"In case of any breach or default on the part of the buyer, the seller may, at his option, either rescind this contract or affirm the same and sue as for a breach thereof.

"In case the buyer so desires, he may at any time on or before April 1, 1920, elect not to purchase the property described in list No. 2, in which case the said property shall be returned forthwith to the seller in as good condition as when taken, and the sum of $1,000 shall be deducted from the purchase price of the property.

"Executed in duplicate, at Bay City, Michigan, this 25th day of March, 1920."

The property described in list No. 2 was returned to petitioner by the bankrupt in accordance with the final paragraph in said contract. Annexed to the contract was an affidavit, duly signed by the bankrupt and sworn to before a notary public, as shown by a proper jurat, as follows:

"Ernest E. Ames, of Bay City, Michigan, being duly sworn, deposes and says that he is the buyer named in the annexed contract for the sale of personal property and the retention of the title thereto, and that he has knowledge of the facts, and that the consideration of said instrument was actual and adequate, and that the same was given in good faith for the purposes therein set forth."

The question whether this contract is an absolute conveyance of the title to the property therein described, subject to a chattel mortgage, in the form of a retention of title, expressed therein as reserved by the petitioner, or, on the other hand, is a true conditional sale, reserving, until the payment of the purchase price mentioned therein, the legal title to said property, depends upon the real intention of the parties to said contract, which in the present case must be determined from the language of the instrument itself, unaided by any evidence of extrinsic facts or circumstances. This question is, of course, material here only for the reason that, if the contract be one intended to operate as a chattel mortgage, it is void as against creditors of the bankrupt (represented by the trustee in bankruptcy), because not filed for record as re-

quired by section 11988 of the Michigan Compiled Laws of 1915. The contract was not accompanied by the delivery, nor followed by the change of possession, mentioned in said section. Nor was such property purchased by the bankrupt for resale. The only statutory provision, therefore, applicable is the following language of said section 11988:

"Every mortgage or conveyance intended to operate as a mortgage of goods and chattels which shall hereafter be made which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers or mortgagees in good faith, unless the mortgage or a true copy thereof shall be filed in the office of the township clerk of the township, or city clerk of the city, or city recorder of cities having no officer known as city clerk, where the goods or chattels are located. * * * And unless the mortgagor named in such mortgage or conveyance intended to operate as a mortgage, or some person for him having knowledge of the facts shall, before the filing of the same, make and annex thereto an affidavit setting forth that the consideration of said instrument was actual and adequate, and that the same was given in good faith for the purposes in such instrument set forth. No officer shall receive such instrument or file the same in his office until such affidavit is made and annexed thereto."

Examining, then, the language of the contract, for the purpose of ascertaining the intention in this connection of the parties as expressed therein, it will be noted that the petitioner is referred to throughout as the "seller," and the bankrupt as the "buyer." The amount involved is called the "purchase price," which "the buyer agrees to pay" in stated monthly payments; such liability not being limited or affected by any future destruction or loss of the property before the payment of such definite price. Unpaid "installments of the purchase price" shall bear interest at a certain rate, payable semiannually. "The buyer shall pay the taxes, if any, which may be assessed or levied against the property." He shall also keep such property insured in companies "satisfactory to the seller," and with loss payable "to the seller as its interest may appear." (The usual covenants in a chattel mortgage.) If default be made in any payment when due and payable, "the whole sum still unpaid shall, at the option of the seller, without notice, become at once due and payable." Upon breach of the contract by the buyer, the seller may either rescind the contract "or affirm the same and sue as for a breach thereof." As declared by counsel for petitioner, "this contract has never been rescinded and never will be." The measure of damages recoverable by one who sues "as for a breach thereof," on a contract of completed sale, is, of course, the purchase price agreed upon in such contract.

It will further be observed that annexed to the contract under consideration is an affidavit containing the very words required, by the language of the Michigan statute already quoted, to be set forth in the affidavit to be annexed to an instrument "intended to operate as a chattel mortgage," before such instrument can be legally filed for record, namely, the statements that "the consideration of said instrument was actual and adequate, and that the same was given in good faith for the purposes therein set forth." This is the only provision of Michigan law, statutory or otherwise, which calls for or refers to such an affida-

vit, and the only possible purpose of making and annexing it to this contract must have been to render such contract legally capable of being filed for record as a chattel mortgage. The affidavit shows on its face, from the jurat duly attested by a notary public under the signature of the affiant mortgagor, that it was subscribed and sworn to before such notary on the same date on which the contract was executed.

It is clear that under this agreement the buyer was absolutely obligated to pay to the seller the definite amount specified, not as damages for breach of a contract to purchase property and subject to the rights of such a party with respect to the effect of a possible failure of consideration, or some other act on the part of the seller owner contracting to sell, but as the purchase price of property which necessarily the buyer had actually purchased, with the consequent liability for such price unaffected by any subsequent loss or destruction of said property. Conversely, the seller was expressly authorized to sue the buyer for the recovery of said price. Certainly the existence of these correlative rights and liabilities with respect to the recovery and payment of the purchase price of this property are inconsistent with any theory to the effect that at the very time when such rights were in force the absolute title to said property was in the party entitled to sue for the price thereof.

[2] Bearing in mind all of the elements and features, including those herein expressly referred to, I cannot doubt that this contract was intended, and should be construed, as an absolute sale with retention of title (so called) as security for the payment of the price of the property so sold. I am also satisfied that the conclusion thus reached is in accord with the rule on this subject settled by the decisions of the Michigan Supreme Court, which (as this contract concerns the title to property in and was intended to be performed within, this state, and its construction involves the applicability thereto of a Michigan statute) should be controlling here. In re American Steel Supply Syndicate (D. C.) 256 Fed. 876, and cases there cited; In re Nader (D. C.) 276 Fed. 123.

This court had occasion recently (In re Goorman, 283 Fed. 119, decided at this term of court) to consider the construction and effect of a contract somewhat similar to the one at bar and, in the course of its discussion of the Michigan rule on the question here involved, used the following language, which applies also to the present case:

"The rule applicable to such a contract as that here involved was stated by this court in the case of In re American Steel Supply Syndicate, 256 Fed. 876, on page 880, as follows: 'I am satisfied that the rule is now settled in Michigan that an agreement providing for the transfer of goods whereby title thereto is retained in the transferor, but the latter reserves the right to bring an action against the transferee for the recovery of the purchase price of such goods, should be construed as an absolute sale with a reservation of title for security merely, and therefore in legal effect a chattel mortgage.'

"This is, in my opinion, still the rule in force in Michigan, and is applied by the Supreme Court of said state in determining the legal effect of such contracts. In Atkinson v. Japink, 186 Mich. 335, on page 338, it was said: 'When the absolute title is reserved, retention thereof by the vendor is inconsistent with an action to recover the debt.' In Young v. Phillips, 202 Mich. 480, on page 484, the following language was used: 'An examination of the third clause of the contract here in question shows that it was the

intention of the parties that an action might be brought to recover the debt· and that the title to the property might still remain in the vendor to secure the payment of the debt. * * * The court might, therefore, very well have directed the jury that the contract in question showed that the title to the property was retained in the vendor simply for security.'

"On rehearing the decision in the case last cited, the Michigan Supreme Court reaffirmed such decision (203 Mich. 566), saying, among other things, on page 569: 'If of the two elements, reservation of title and the right to maintain an action to recover the debt the latter is missing, there is no inconsistency, and * * * the conclusion may be immediately drawn that there was no intention to make an absolute sale with the reservation of lien by way of security. Such a contract becomes a pure conditional sale, under which the goods can be retaken by the vendor even from third parties, and the vendor may still have an action for damages for breach of contract against his vendee, if he has suffered any such damage. But if the instrument purports to reserve title and to give a right of action to recover the debt without passing title, the two being inconsistent * * * it must be concluded that the intent of the parties was to make an absolute sale with the reservation of a lien by way of security.' The same rule is followed in National Cash Register Co. v. Paul, 213 Mich. 609. * * *

"The following language of the Michigan Supreme Court in National Cash Register Co. v. Paul, supra, is apt and applicable here: 'It is true that we find present in this contract, not only an evident attempt to make an absolute sale, but at the same time an attempt to put the transaction in the form of a conditional sale, so that the vendor can take either position. In other words, an attempt "to ride with the hunter and run with the hounds." But, taking the entire contract and proceeding into consideration, we are of the opinion that we have a case of chattel mortgage, and not conditional sale.' "

It is urged in one of the characteristically scholarly and able briefs of counsel for petitioner that in the case of Young v. Phillips, supra, 203 Mich. 566, 169 N. W. 822, on rehearing the court said (in a paragraph hereinbefore quoted in part) that, "if the instrument purports to reserve title and to give a right of action to recover the debt without passing title, the two being inconsistent according to the test in Atkinson v. Japink, it must be concluded that the intent of the parties was to make an absolute sale with the reservation of a lien by way of security"; and counsel insists that the phrase "without passing title" is what makes the expressed "right to maintain an action to recover the debt" inconsistent with the previously mentioned reservation of title.

With this contention I am unable to agree. It seems plain to me that such argument overemphasizes and distorts the second reference, by the court in this case and connection, to the retention of title, which, in my opinion, is merely an indirect repetition of the thought already expressed by the allusion to the hypothetical "instrument" which "purports to reserve title," while still giving the right to sue for the debt "without passing [said] title." I cannot distinguish the instant case, in principle, from the case of National Cash Register Co. v. Paul, supra, 213 Mich. 609, 182 N. W. 44, 17 A. L. R. 1416, apparently the last reported expression of the opinion of the Michigan Supreme Court upon this subject, and am of the opinion that here are present the " 'ear-marks' of an absolute sale," and that, "taking the entire contract and proceeding into consideration, * * * we have a case of chattel mortgage, and not of conditional sale."

All of the authorities cited in the briefs have been carefully examined and considered, but are, except in so far as they have herein been spe-

cifically discussed or mentioned, distinguishable or otherwise inapplicable to the facts and law of this case.

It results that the order of the referee must be affirmed.