Argued March 3; affirmed April 21, 1942

# JACKSON v. CLACKAMAS MEAT CO.

(124 P. (2d) 719)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*Ralph A. Coan*, of Portland (Butler & Jack, of Oregon City, and Coan & Rosenberg, of Portland, on the brief), for appellant.

*Louis E. Starr*, of Portland (James S. Gay, Jr., of Portland, on the brief), for respondent.

\* \* \* \* \*

BRAND, J. The principal contest between the parties relates to the authority of E. G. Huston, who was president of the defendant company, to bind the corporation by his act in signing the conditional sales contract and note. The trial court found that the contract sued upon was not the contract of the defendant corporation and rendered judgment accordingly. The testimony upon this issue and the inferences to be drawn therefrom are conflicting, and any conclusion at which we might arrive would be highly debatable. We find it, however, not necessary to pass upon the question. If, as the trial court found, the defendant corporation never contracted with the plaintiff, then the decree must be affirmed. If, on the other hand, as is per-

suasively argued, the defendant is bound by the note and contract, there are other considerations which again require that the decree of the lower court be affirmed. For the future purposes of this opinion we shall assume, without deciding, that E. G. Huston was authorized to execute the alleged note and contract on behalf of the defendant company. Upon that assumption we shall consider whether or not the plaintiff is entitled to the relief which he seeks.

The first agreement involving the equipment in question was dated August 7, 1935, to which is affixed the signature, "Clackamas Meat Company, Inc., E. G. Huston, President." On its execution $200 was paid upon the purchase price by a draft drawn by Huston on the defendant company. Thereafter, for reasons not made clear, a new contract was executed covering all of the property described in the contract of August 7, with some additions. It is upon this second contract of November 12, 1935, that suit is brought.

Plaintiff received one payment of $57.69 on December 21, 1935, and upon the contract in suit. In March 1936, the plaintiff repossessed the property. Thus, it appears that the purchaser had possession of the goods for seven and a half months, of which only four and a half months was under the contract of November 12, 1935.

It will be observed that by that contract the vendor reserved to himself the right to elect any one of a variety of remedies. We are not concerned with that right, but are rather to determine which of the remedies he did in fact elect. The evidence discloses that the purchaser of the equipment failed to pay the rent on certain premises in which it was stored and that the agent of the landlord notified the plaintiff that if plaintiff did not take the equipment it would be set

out into the street. Plaintiff thereupon repossessed the property and stored it. Plaintiff testified as follows:

"Q: What is the fact as to whether or not you have been holding it subject to this agreement that is in evidence here?

"A: That is the reason I have been holding it."

Plaintiff further testified that he had stored the goods in his own warehouse from the time of the recaption until April 1940. In answer to a question whether he had paid any storage on the repossessed goods, plaintiff answered:

"Well, all of the years that I have carried it in my office at 1116 Alder, we have charged $25 a month."

Thus, it appears that instead of paying storage plaintiff had stored the goods himself and was charging the defendant $25 a month therefor. After April 1940, the plaintiff stored the goods for three months at 11th and Flanders, concerning which place he testified:

"At one time I think it had been a livery stable or something."

He then moved it out on Columbia Slough Road. Counsel inquired:

"Where is it located now?"

to which he answered:

"It is an old schoolhouse. I do not know the exact address—just a minute, maybe I have got it. I have got the key to it here—5926 N. E. Columbia Boulevard."

Plaintiff testified that the equipment was not being used.

There is no evidence to show that the plaintiff ever notified the defendant that he was repossessing the property or ever indicated to the defendant in any way

whether the property was repossessed under the option to forfeit the contract and resume full title free of any claim or whether it was repossessed as security for the balance of the purchase price. This situation continued from March 1936 to July 1940, when the complaint was filed, and in the complaint for the first time the plaintiff alleged:

"The plaintiff is the owner and holder of said conditional sales contract and installment note and does hereby declare the full balance due * * * on said conditional sales contract and installment note, together with accrued interest, to be now due and payable."

and for the first time through the medium of his complaint the plaintiff notified defendant that he had repossessed the property, and

"* * * ever since said time has held said personal property subject to the terms of said conditional sales contract and as security for the payment of the balance due on said conditional sales contract and installment note."

Thus, the plaintiff repossesses the goods and for four years holds them while the goods depreciate and the storage charges and interest at ten per cent pile up, and at the end of the period by complaint he notifies the defendant that all unpaid installments, including some not then matured (assuming the contract to be in force) are due and payable, and that, lo, these many years, he has held the goods as security. And the plaintiff has appealed to equity.

■■ Under these circumstances we think that when the plaintiff in 1936 repossessed the goods, he must be deemed to have exercised the first option available to him under the decisions of this court, to wit:

"He may treat the contract as rescinded upon default of the buyer and recover the goods. In that

event, that is his only remedy." *Standring v. Gordon,* 118 Or. 339, at 345, 246 P. 361; *Lynch v. Sable,* 122 Or. 597 at 602, 260 P. 222, 55 A.L.R. 180.

His undisclosed intention to hold the goods as security, if such there were, cannot avail him now. In fact, there is doubt as to what the intent of the plaintiff was during the four years preceding commencement of suit. We quote from the plaintiff's testimony:

"Q: Now on the date that this suit was brought, July 25, 1940, had the entire contract matured in the installment note?
"A: No.

&ast; &ast; &ast; &ast; &ast;

"The Court: Well, did you declare the whole sum then due and payable?
"A: No.
"The Court: Well, you have an allegation in your complaint that you did.
"A: We did on this date, yes.
"The Court: What is that?
"A: We did on the date that we filed, *when I got the title to the property."* (Italics ours.)

The plaintiff is not bound by a conclusion of law, but here his manifest intent is material, and his reference to "when I got title to the property" does not suggest the attitude of one holding for security. It appears likely that the adoption of the equitable forum to foreclose the contract was at the suggestion of his advisors.

We do not suggest that the plaintiff could not have adopted some other remedy, but only that he did not.

"If the seller exercises his right to reclaim the goods, it is generally held an election to rescind the contract, and thereafter an action for the price or any unsatisfied balance of it is not allowed.

"It is obviously possible, however, for the seller to resume possession of the goods without intending thereby to rescind the contract. He may, it would seem, resume possession without forfeiting or claiming to forfeit the buyer's right to pay any unsatisfied portion of the price and thereby perfect his own ownership, but merely to increase his own security. Nevertheless, the mere reclaiming of possession seems generally regarded as an election to rescind; and it seems probable that it is in most cases a correct inference from the reclaiming of possession by the seller that he intends to terminate the buyer's interest in the goods." 3 Williston on Contracts, No. 736, p. 2086.

■ The learned authority points out further that the mere reclaiming of possession and manifestation of an intent to terminate the buyer's interest in the goods does not necessarily involve a termination of the buyer's obligation to pay the price, and in cases in which the contract authorizes further recovery from the vendee after the repossession of the chattel by the vendor our decisions are in accord. For example, the plaintiff in the case at bar had a right to take possession of the chattel and sue for damages.

"He may treat the contract as in force but broken by the vendee; he may retake and keep the goods as his own, and, if the contract imposed upon the buyer an absolute obligation to buy, he may recover of the buyer damages for the breach of his agreement to buy and pay for the goods. The measure of damages will ordinarily be the difference between the contract price and the market value of the goods at the time and place of default." *Endicott v. Digerness*, 103 Or. 555, at p. 561, 205 P. 975.

It is clear that the plaintiff did not elect such a remedy, however, for he has invoked the aid of equity, whereas an action for damages would be at law. Nor does he seek in this case the difference between the

contract price and the market value of the goods at the time and place of default.

■ He also had a right to retake possession, treating the contract as still in force and holding the property "as security for the fulfillment of the agreement." *Endicott v. Digerness* (supra), *Manley Auto Co. v. Jackson*, 115 Or. 396, 237 P. 982 *First National Bank v. Yocom*, 96 Or. 438, 189 P. 220; *Oregon Motor Co. v. Carter*, 123 Or. 215, 261 P. 691; *International Harvester Co. v. Bauer*, 82 Or. 686 at p. 691, 162 P. 856.

■ If, for security, the plaintiff had repossessed the property from the buyer on whom was the risk of loss and who enjoyed the beneficial ownership (though not the title) it must have been as the first step in a foreclosure, and having taken that step he would have had a duty of diligence akin to that of a trustee to realize upon the security for the proper protection of the purchaser, and since the mere repossession of the goods ordinarily would manifest an intention to work a forfeiture at law, his duty would have involved the exercise of reasonable diligence in making known to the purchaser the proposed character of the repossession, for security. The proper procedure is indicated in *Manley Auto Co. v. Jackson* (supra) where the vendor in repossessing the chattel notified the vendee that recaption was for the purpose of foreclosing, and that it would look to the vendee for the balance. The plaintiff's conduct did not manifest to the purchaser any intent to follow that course.

■ The remedies of conditional vendors of chattels are ordinarily at law. Our decisions wisely indicate that the right to take possession, sell on foreclosure in equity and take deficiency judgment is available only if the contract so provides. *McDaniel v. Chiara-*

*monte,* 61 Or. 403, 122 P. 33; *Oregon Motor Co. v. Carter* (supra).

The knowledge of the pretended election of such a remedy, invoking as it does relief in equity, should not be locked in the breast of the vendor for four years while the goods depreciate and the charges mount.

We find that the plaintiff is the owner of the goods, free of any claim of the defendant, but plaintiff has exhausted his remedy and is not entitled to the relief which he seeks. The judgment of the circuit court is affirmed, defendant to recover costs.

RAND, J., concurs in the result.